JOHN CLIFFORD

v.

JOHN C. COCHRANE.

1. LIBEL—WORDS SPOKEN OF ONE IN HIS PROFESSION.—Any words spoken of one in his office, trade, profession or business, which tend to impair his credit, or charge him with fraud, or indirect dealings, or with incapacity, and that tend to injure him in his trade, profession or business, are actionable without proof of special damage. So, to say of an architect, "the poor fellow is crazy," and that "his appointment (as architect of a public building) could be regarded in no other light than a public calamity," is actionable *per se*.

2. DAMAGES.—An allegation that the libel published in a paper in Chicago was republished in a paper in San Francisco, by reason whereof the plaintiff lost his position as architect of the city hall in the latter place, does not show sufficient ground to charge the defendant with special damages, unless it is shown that he was in some way connected with its republication in San Francisco.

ERROR to the Circuit Court of Cook county; the Hon. ELLIOTT ANTHONY, of the Superior Court, sitting as Circuit Judge, presiding.    Opinion filed April 10, 1882.

This was an action for libel, brought by appellant against appellee, based on the publication of an article in the Chicago *Times* newspaper, and which was subsequently republished in the San Francisco *Chronicle*. The declaration sets forth, in substance, that the plaintiff was an architect by profession; that he was employed by the city hall commissioners of San Francisco, to superintend the construction of the new city hall building in that city; that he gave the required bond, and entered upon the discharge of his duties as architect of the building. It then alleges the formation of a conspiracy, by a ring composed of divers persons in San Francisco, including the proprietors of the San Francisco *Chronicle*, to force the plaintiff to resign, so that they might elect one of their own number, and thus get control of the expenditure of the moneys, etc.; that to that end they procured certain false "opinions" so-called, of other architects, and among others the opinion of the defendant, Cochrane, to the effect that the plaintiff was crazy and wholly incompetent to discharge the duties of an architect, and that his appointment would be a public calamity, etc. That the opinion of the defendant was in the form of a conversation or interview between a reporter of the Chicago *Times*, and the defendant, the latter knowing at the time of making them that his statements were to be published in that paper. The declaration alleges that the statements were published in the *Times*, and a few days subsequently appeared in the *Chronicle*.

The interview, as reported in the *Times*, was as follows :

Reporter :    " Mr. Cochrane, with your permission I should like to ask you a few questions.    Do you know an architect by the name of John Clifford ? "

Cochrane : " Well, I did know an architect by the name of John Clifford some years ago, but he has not been a resident here for several years.   I wonder what has become of the poor fellow."

Reporter : " I can enlighten you.   He is in California. What is your opinion of him both as an individual and an architect ? "

Cochrane : " Well, as an individual, if you want me to speak frankly, I think he is crazy."

Reporter : " What would you say if he had been appointed architect of our city hall ? "

Cochrane : " I could scarcely conceive of such a thing happening; but had it happened I should regard it in the light of a public calamity.   But, excuse my curiosity, why do you ask these questions ? "

Reporter : " Because Mr. Clifford has been appointed architect of the San Francisco city hall—"

Cochrane: " What, you are joking!   Why the thing is impossible."

Reporter: " Nothing is impossible under an inscrutable Providence.   I am afraid you are weak in the faith.   Let me reassure you.   Not only has this come to pass, but more remarkable still, in view of what you have just said, he refers to you as one who can vouch for his qualifications to creditably fill the position."

Cochrane: " You don't say so!   He refers to me, does he? Well, well, to be sure, this is a somewhat delicate matter; but I have nothing to take back.   I again say that I can not regard his appointment in any other light than a public calamity."

The declaration contains the usual *colloquium* and *innuendoes*, alleging the words to have been spoken of the plaintiff as an architect, and avers that in consequence of the republication of the article in the San Francisco *Chronicle*, his bondsmen withdrew as sureties on his bond, and being unable to procure others, he was forced to, and did, resign his position as architect of the building in question.

The declaration also avers that by reason of the committing of the several grievances complained of, the plaintiff has been

Clifford v. Cochrane.

injured in his good name and in his reputation as an architect, and has been deprived of great gains and profits, which would otherwise have accrued to him; and that he suffered special damage by being forced to give up his position as architect of the new city hall building, whereby he was deprived of large profits, etc.   Damages laid at $50,000.

To the declaration the defendant filed a general demurrer, which was sustained by the court, and the plaintiff standing by his declaration, judgment was rendered for the defendant. The plaintiff appealed to this court, and assigns for error the sustaining of the demurrer to the declaration.

Mr. W. T. BUTLER and Mr. ROBERT HERVEY, for plaintiff in error; that the words are actionable *per se*, cited Townshend on Libel and Slander, 75; 2 Addison on Torts, 308; Homer v. Stanford, 4 Sneed, 520; Southwick v. Stevens, 10 Johns. 443.

Messrs. ROBERTS & HUTCHINSON, for defendant in error; that defendant can not be held liable for damages sustained by reason of a republication of the libel, cited Townshend on Libel and Slander, 155; Vickars v. Wilcocks, 8 East, 1; Odgers on Libel and Slander, 321.

WILSON, P. J.   It is first insisted by the learned counsel for appellee, that the plaintiff's declaration consists of two counts instead of one, and that as such, neither count shows a cause of action.   After a careful examination of the allegations and averments of the declaration, we fail to perceive any foundation for the construction claimed.   The declaration is very voluminous, and consists largely of recitals by way of *induce-ment* to the subsequent allegations as to the uttering and publishing of the words, and the resulting damages.   It recites the appointment of the plaintiff as architect of the new city hall building, in San Francisco; the formation of a conspiracy to force him to resign; the means resorted to through the publication of false "opinions" so called, as to his competency as an architect, one of which consists of the statements of the defendant to a reporter of the Chicago *Times.*   It alleges the publication of those statements in the *Times*, the defendant

knowing at the time of making them they were to be published in that paper; alleges the republication of the article in the San Francisco *Chronicle*, and the consequent loss of his position as architect of the new city hall, and concludes by averring both general and special damages. The declaration is obviously framed as a single count, and by no rule of construction is it divisible into two.

Were the words as set out in the declaration actionable without proof of special damages? That they are so, we entertain no doubt. It is a familiar principle that words not actionable in themselves may become so if spoken of one engaged in a particular calling or profession. The general rule in relation to the speaking of words of one in a particular calling may be stated as follows: any words spoken of such a person in his office, trade, profession, or business, which tend to impair his credit, or charge him with fraud, or indirect dealings, or with *incapacity*, and that tend to injure him in his trade, profession, or business, are actionable, without proof of special damage. Starkie on Slander, 178 and notes; Townshend on Slander, 278 (3d Ed.) ; Ostram v. Calkins, 5 Wend. 263 ; Demarest v. Haring, 6 Cow. 76 ; Chaddock v. Briggs, 13 Mass. 247 ; Chipman v. Cook, 2 Tyler Vt. 456 ; McMillen v. Birch, 1 Binney, 178 ; Day v. Buller, 3 Wils. 59 ; Onslow v. Horne, Id. 177.

In the latter case Lord Ch. J. DeGray said : " One of the general rules governing this action, is that words are actionable when spoken of one in an office of profit which may probably occasion the loss of his office, or when spoken of persons touching their respective professions, trades, and business, and do, or may probably tend to their damage." The rule as thus succinctly and comprehensively stated, is quoted by Parker, Ch. J., in Chaddock v. Briggs, *supra*, as also in many other cases, and may be regarded as declaratory of the established principle governing this class of actions. Applications of this rule are found in the cases of clergymen, physicians, lawyers, tradesmen, mechanics, etc. Thus, to accuse a clergyman of incontinence, a physician of being a quack or humbug, a lawyer of being an ignoramus, a watchmaker of being a bungler, when spoken of them in their respective callings, is actionable *per se*, without proof of special damage.

Clifford v. Cochrane.

In Day v. Buller, *supra*, which was an action against the defendant for slandering the plaintiff in his profession as an attorney, the words were, "What! does he pretend to be a lawyer? He is no more a lawyer than the devil." It was held he was entitled to recover, the words having been spoken of him in his professional character, and so tending to injure him in his business as an attorney. But in another case, where an attorney was plaintiff, and the words were "He has defrauded his creditors, and been horse-whipped off a race-course," the words were held not actionable, without proof of special damage having been spoken of the plaintiff in his individual capacity. Doyler v. Roberts, 3 Bing. 835. To say of a physician, if spoken of him in his profession, he is "no scholar," was held actionable. Starkie on Slander, § 112. But to say of him he is a "dunce," if spoken of him only as an individual, gives no right of action. The citation of analogous cases might be multiplied indefinitely, but it is unnecessary. It may be added that this distinction between the cases, of words spoken of a person in a particular calling and those spoken of him individually, is everywhere recognized and acted upon by the courts in action for libel and slander.

Applying the rule as above stated to the facts of the present case, there can be no pretense for saying that the words, as alleged in the declaration and admitted by the demurrer, are not actionable *per se*. To say of the plaintiff, "The poor fellow is crazy," and that his appointment could be regarded in no other light than a public calamity, with other similar statements made and repeated after the defendant had been notified that the plaintiff had referred to him as to his qualifications as an architect, was, if the words were untrue, a grievous slander, which would naturally and almost necessarily tend to the plaintiff's injury. It was tantamount to a direct and positive assertion that the plaintiff was destitute of the necessary qualifications for the proper discharge of the duties of an architect. In actions for slander and libel, the rule no longer is, that words are to be understood *in mitiori sensu*, but they are to be taken according to their plain and natural import. The Supreme Court of Massachusetts say: "The old rule is

exploded, and the more sensible course is to give the natural meaning and effect to the terms, according to the spirit and temper in which they appear to have been used." 13 Mass. 247, *supra.* But it is not necessary to invoke that rule, for here the words are plain and unambiguous, and are susceptible of only one meaning.

As to the plaintiff's claim for special damages by reason of the loss of his position as architect of the San Francisco city hall, we are inclined to the opinion that no case is shown for the recovery of such damages under the allegations of the declaration. There is no allegation that the defendant authorized or knew that his statements to the reporter of the *Times,* were to be republished in that paper. The allegation is, that he spoke the words knowing they were to be published in the Chicago *Times.* By submitting to be interviewed, and knowing that the interview was to appear in the *Times,* he impliedly authorized its publication in that paper, and is therefore responsible for such damages as were the natural and proximate consequences of that publication.

The special damages occasioned by the loss of the plaintiff's position as architect, was caused by the republication of the article in the *Chronicle.* We do not think such republication can be regarded as the necessary, or the natural and proximate consequence of the publication in the *Times.* Townshend, in his treatise on Slander and Libel, says of an oral publication: "The act of publication is, as to each publisher, an entirely distinct act. Each person can only be liable for the publication made by him. If one makes an oral publication, and another repeats it without authority from the first speaker, the first publisher is not liable for the repetition." And in respect to the publication of written or printed libelous words dictated by a person, the same author remarks: "The dictation to incur any responsibility for a subsequent publication of the language dictated, must be made with an intent or request that the language so dictated shall be subsequently published."

If one newspaper copy and publish a libelous article from another, the paper so copying and publishing makes the article its own, and is responsible for its reproduction. The fact

that the article has previously appeared in another newspaper may, in some cases, have an influence on the amount of damages to be awarded, particularly if the reproduction be accompanied by observation which may make it harmless. But as a general proposition, the mere fact that a libelous article in a newspaper had been previously published in another, affords no justification to an action of libel against the publisher of the newspaper so copying and reproducing it. Starkie on Slander and Libel, § 323. As already observed, however, it would seem, both on principle and authority, that no liability attaches to the author of the libel for such reproduction, unless it is made by his authority or consent, either express or implied.

Being of opinion that the court below erred in sustaining the defendant's demurrer to the declaration, the judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded.