Morris D. OBERMAN, Plaintiff-
Appellant,

v.

DUN & BRADSTREET, INC.,
Defendant-Appellee.

No. 73–1845.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1974.

Decided Dec. 3, 1974.

Rehearing Denied Jan. 16, 1975.

**350**

Elmer Gertz and Wayne B. Giampietro, Chicago, Ill., for plaintiff-appellant.

Don H. Reuben and Lawrence Gunnels, Chicago, Ill., for defendant-appellee.

Before HASTIE * and CASTLE, Senior Circuit Judges, and FAIRCHILD, Circuit Judge.

CASTLE, Senior Circuit Judge.

Plaintiff Morris D. Oberman appeals from the entry of a judgment notwithstanding the verdict in favor of defendant Dun & Bradstreet, Inc. Oberman contends on appeal that the district court improperly concluded that certain testimony should have been excluded as inadmissible hearsay evidence, and that the district court erroneously granted the defendant's motion for judgment n.

o. v. We reverse the judgment of the district court and remand with directions to reinstate the jury's verdict for the plaintiff and to proceed to trial on the remaining issues.

The single issue before the jury in this diversity action was whether an allegedly libelous credit report issued by defendant Dun & Bradstreet was the reason for Prudential Realty Company's refusal to sell or lease a desired business property, the Hamlin Avenue building, to the plaintiff.[1] At trial, Oberman testified, over objection, to an August 25, 1967 telephone conversation with Mr. Hubert Rance, President of Prudential Realty Company, concerning the sale or lease of the Hamlin Avenue property. The essence of Oberman's account of the telephone conversation was that Rance stated that he could not lease the building to him because the Dun & Bradstreet credit report was unfavorable. Oberman testified:

I says, "Well, if you are buying the building you will need a lessee, so I will lease the building. . . .

He [Rance] said, "Well, you can't do that either."

I said, "Why?"

He said, "Well, I may as well give you the facts. I was trying to be nice to you. So I will give you the facts. I want to read a report to you I got here from Dun & Bradstreet."

.   .   .   .   .   .

I asked him, "What does that report say to prevent me from leasing the building?"   .   .   .   .

He said, "You got a non-borrowing account at the bank. You got five thousand worth of receivables in your business. You are worth a thousand dollars. How are you going to pay one thousand four hundred thirty dollars a month for rent?"

---

\* Senior Circuit Judge William Henry Hastie of the Third Circuit is sitting by designation.

1. This libel action has been before this court on a prior occasion. Oberman v. Dun & Bradstreet, Inc., 460 F.2d 1381 (7th Cir.

1972). In that opinion we found that there existed a genuine issue of material fact as to whether the allegedly libelous credit report caused "special damages," and remanded for trial. *Id.* at 1386.

. . . . . .

I says, "I am really shocked at such a kind of report, . . . ."

I says, "I am going to look into this right now." I says, "I can get that corrected."

He says, "Forget it. It is all over."

The defendant contended that the Dun & Bradstreet report, which was mailed on August 14, 1967, could not have been the cause of Prudential's refusal to lease the Hamlin Avenue property to the plaintiff because the building had been removed from the lease market on August 10, 1967. To support this contention, Mr. Dan Unger testified that he had committed to buy the building on August 10, and he also stated that his decision to purchase was made on the strength of a concurrent commitment to lease the building by Interstate Photo Supply Company, and that he was therefore advised to remove the building from the lease market. Rance similarly testified that at the time of the commitment to sell on August 10, the Hamlin Avenue building had simultaneously been removed from the lease market.

However, in a letter to Unger dated August 11, 1967, Rance wrote with regard to the property that "inasmuch as we have pretty good potential lessees in the building, I think we will wait on final mortgage commitment." Rance testified that by "potential lessees" he had meant the actual lessee, Interstate Photo. Unger stated that he could not recall whether "potential lessees" referred to other prospective tenants, and neither Unger nor Rance knew when the lease with Interstate Photo, who eventually did rent the building, was actually signed.

At the close of all the evidence, the defendant's motion for a directed verdict was denied, and the jury returned a verdict for the plaintiff. The court initially denied defendant's motions for judgment notwithstanding the verdict, or in the alternative for a new trial, but upon reconsideration granted the motion for judgment n. o. v., and entered judgment for the defendant.

### I.

It is conceded that unless the telephone conversation between Oberman and Rance was properly before the jury, there would be no evidence that the Dun & Bradstreet report caused Prudential's refusal to lease the Hamlin Avenue building. The plaintiff claims that the conversation was correctly admitted under the state of mind exception to the hearsay rule. The defendant argues that Rance was not expressing a state of mind, but that he was remembering a past decision, and defendant points to Rance's statement at the end of the conversation with Oberman to "Forget it. It is all over." as evidence of that fact. The defendant asserts that under Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933), statements of memory or belief are not includible within the state of mind exception.[2]

Oberman's account of the telephone conversation with Rance is hearsay, but under the state of mind exception to the hearsay rule, an out of court declaration of a present existing motive or reason for acting is admissible, even though the declarant is available to testify. Lawlor v. Loewe, 235 U. S. 522, 536, 35 S.Ct. 170, 59 L.Ed. 341 (1915); American Cooperative Serum

2. The defendant also relies on proposed Federal Rule of Evidence 803(3), 56 F.R.D. 183, 300, 305 (1972) which codifies the holding of *Shepard*. That Rule provides in part:

   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

   (3) *Then existing mental, emotional, or physical condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed

Ass'n v. Anchor Serum Co., 153 F.2d 907, 912 (7th Cir.), cert. denied, 329 U.S. 721, 67 S.Ct. 57, 91 L.Ed. 625 (1946); VI Wigmore on Evidence § 1729(2)(3d ed. 1940). This exception rests on the rationale that the declarant's memory of his state of mind, at a time when there is ample opportunity for misrepresentation, is no more likely to be correct than another's recollection of the declaration. Since evidence of the declarant's state of mind can only be indicated by the declarant's conduct or statements, the exception to the hearsay rule provides for their admission. Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); VI Wigmore, *supra*, at § 1714.

The leading case of Shepard v. United States, *supra*, has helped to define the boundaries of the state of mind exception. In *Shepard,* the defendant was accused of murdering his wife, and the prosecution introduced the testimony of the nurse that the wife, after her collapse, had told her that "Dr. Shepard has poisoned me." In holding the testimony inadmissible to show the wife's state of mind, the court stated that:

> Declarations of intention casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. . . .
>
> The testimony now questioned faced backward and not forward. . . .
>
> [I]t spoke to a past act . . ..

*Shepard, supra,* 290 U.S. at 105–106, 54 S.Ct. at 26.

The statement in *Shepard* was excluded because the declaration was the result of the memory of past events, and the declaration therefore carried the inference that these events actually occurred. The wife's recollection of these events which gave rise to the declaration could be plagued by problems of perception and memory, and the inability to test these factors, as is the case with a classic hearsay statement, called for the statement's exclusion. *See* Greater N.Y. Live Poultry Chamber of Commerce v. United States, 47 F.2d 156 (2d Cir.), cert. denied, 283 U.S. 837, 51 S.Ct. 486, 75 L.Ed. 1448 (1931); Tribe, Triangulating Hearsay, 87 Harv.L.Rev. 957, 970–71 (1974).

■ Rance's statements, however, do not face backward. For present purposes, it is of no moment whether the facts which gave rise to Rance's declaration were true or actually occurred, because the concern here is only with the reason for Rance's refusal to lease the Hamlin Avenue property. Thus, there are no problems of memory and perception of the declarant to be tested, and therefore, as in the usual state of mind situation, Oberman's recollection of the statement is as likely to be correct as Rance's recollection.

■ Furthermore, we do not find Rance's comments to "Forget it. It is all over." to indicate that Rance was relying on memory to recall only the result of a distant past decision. At the time of the telephone conversation, Rance was expressing present existing reasons for his refusal to lease the Hamlin Avenue property to Oberman. We conclude, therefore, that Oberman's testimony falls within the state of mind exception to the hearsay rule, and was properly considered by the jury. Lawlor v. Loewe, *supra*; American Cooperative Serum Ass'n v. Anchor Serum Co., *supra.*

## II.

The district court concluded, and it is defendant's position here on appeal, that even if the telephone conversation was properly admitted, the defendant nevertheless was entitled to a judgment n. o. v. The district court found that "the verdict of the jury for the plaintiff on the issue of proximate cause [was] clearly contrary to the manifest weight of the evidence. . . ."

■ In granting defendant's motion, however, the district court utilized the wrong standard. In this circuit in diversity cases the state law standard for judgment n. o. v. is applied. Wie-

loch v. Rogers Cartage Co., 290 F.2d 235, 237 (7th Cir. 1961); Etling v. Sander, 447 F.2d 593, 594 (7th Cir. 1971). The most quoted formulation of the proper Illinois standard to be applied, is set forth in Pedrick v. Peoria & E. R.R., 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–514 (1967):

> In our judgment verdicts ought to be directed and judgments *n. o. v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

Our inquiry is therefore not directed to whether the jury's verdict was against the manifest weight of the evidence, but is instead directed to whether, based on the evidence viewed in a light most favorable to the plaintiff, the evidence so *overwhelmingly favors* the defendant, that no contrary verdict based on that evidence could ever stand. Valdes v. Karoll's, Inc., 277 F.2d 637 (7th Cir. 1960); Wieloch v. Rogers Cartage Co., *supra*. We are also mindful that our inquiry is not concerned with the credibility of the evidence because that is a matter for the jury. Grepke v. General Electric Co., 280 F.2d 508, 512 (7th Cir. 1960).

█ Applying the appropriate standard, we cannot say that the evidence only supports one reasonable conclusion in defendant's favor. Oberman's account of the telephone conversation was that Rance refused to lease the Hamlin Avenue building because of the unfavorable Dun & Bradstreet credit report. Although Rance and Unger testified that by the time the credit report was mailed the building was not available for lease because it had been removed from the market on August 10, in a letter dated one day later Rance wrote to Unger that "we have pretty good potential lessees in the building . . . ." It was therefore eminently reasonable for the jury to conclude that despite Rance's and Unger's testimony, the letter indicated that the building had not been removed from the lease market, and that

the Dun & Bradstreet report thereby caused the plaintiff's harm.

The defendant's reliance on Continental Nut Co. v. Robert L. Berner Co., 393 F.2d 283 (7th Cir.), cert. denied, 393 U. S. 923, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968), where entry of a judgment n. o. v. for the defendant was affirmed, is misplaced because in that case the court found that there was no evidence from which the jury could conclude that an allegedly libelous letter caused the plaintiff any loss in sales. As the above discussion demonstrates, however, there is no equivalent lack of evidence here. We conclude, therefore, that the district court erred in granting the defendant's motion for judgment n. o. v.

█ Finally, we note that Fed.R.Civ. P. 50(c)(1) provides that if the motion for judgment notwithstanding the verdict is granted, "the court shall also rule on the motion for a new trial . . . ." *See* Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940). Although the district court initially denied the defendant's motions for judgment n. o. v. or in the alternative for a new trial, upon reconsideration the court only granted the judgment n. o. v., and did not rule on the motion for a new trial. It is unclear to us whether the district court intended to vacate the denial of the motion for a new trial and then failed to reconsider that motion, or whether the court intended that the denial stand. In any event, the defendant acquiesced in the trial court's actions, and here only urges that we affirm the grant of judgment n. o. v. In Vera Cruz v. Chesapeake & O. R.R., 312 F.2d 330, 332 (7th Cir.), cert. denied, 375 U.S. 813, 84 S.Ct. 44, 11 L.Ed.2d 49 (1963), we held that the motion for a new trial is abandoned if not pressed on the trial court after the grant of judgment n. o. v. We therefore need not remand for a ruling on the motion for a new trial. Accordingly, the judgment of the district court is reversed, and remanded with directions to reinstate the jury's verdict for the plaintiff and to proceed to trial on the remaining issues.

Reversed and remanded.