JOSEPH COLUCCI *et al.*, Plaintiffs-Appellants, *v.* CHICAGO CRIME COMMISSION, Defendant-Appellee.

(No. 59386;

First District (2nd Division)—August 5, 1975.

*Rehearing denied September 30, 1975.*

Jenner & Block, of Chicago (Thomas P. Sullivan and Russell J. Hoover, of counsel), for appellants.

Kirkland & Ellis, of Chicago (Don H. Reuben, Lawrence Gunnels, Keith C. McDole, and Barbara B. Lounsbury, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Joseph Colucci, and Joseph Colucci, doing business as Parkside Motors, filed a three-count complaint in the Circuit Court of Cook County based on allegedly defamatory statements made by defendant, Chicago Crime Commission (Commission), a private, not-for-profit corporation. Each of the first two counts sought injunctive relief and $1,000,000 in damages. The third count asked only for $1,000,000 in damages. Defendant filed a series of motions seeking summary judgment (Ill. Rev. Stat. 1971, ch. 110, par. 57(2)), and that, for various reasons, plaintiff's complaint be dismissed. (Ill. Rev. Stat. 1971, ch. 110, par. 45.) After a series of rulings by the trial court, plaintiff's entire complaint was ultimately dismissed. Plaintiff now appeals.

On October 26, 1967, the Commission published a pamphlet entitled "The Chicago Crime Commission Spotlight On Organized Crime—The Chicago Syndicate" (hereinafter Spotlight I). The report stated:

"NORTHWESTERN CANDY & TOBACCO COMPANY * * *
is a wholesaler of candy and tobacco products to retail businesses and vending machine operators. The 1966 Illinois Secretary of State's records reflect George Colucci, president and registered agent, and Vito Colucci, secretary. George Colucci is a brother of Joseph Colucci who was identified before the U.S. Senate Subcommittee on Investigations as a member of the Chicago crime syndicate."

On June 24, 1968, the Commission published "Spotlight On Legitimate Business and The Hoods—Part II" (hereinafter Spotlight II). That report stated:

"PARKSIDE MOTORS
This automobile agency is operated by Joseph Colucci, who was identified in 1963 before the United States Senate Permanent Subcommittee on Investigations as a member of the Chicago crime syndicate."

On November 6, 1969, the Commission published "Spotlight On Legitimate Business And The Hoods—Part III" (hereinafter Spotlight III). That report begins with this preface:

"In October 1967, the Chicago Crime Commission published its 'Spotlight on Organized Crime—The Chicago Syndicate.' In that publication, we listed 42 businesses that have a connection with known members of the crime syndicate. In June 1968, the Commission published its 'Spotlight on Legitimate Businesses and the Hoods, Part III,' listing an additional 30 companies. This is Part III."

The report went on to state:

"Businesses Previously Named Which Are Still in Operation.
*  *  *

Parkside Motors
*  *  *"

Based on those three reports, plaintiff, on August 3, 1970, filed a three-count complaint in the circuit court. In Count I, plaintiff pleaded the three Spotlights; that they were defamatory and untrue; that they were distributed to numerous agencies, governmental officials, private citizens, and business entities; and that, as a direct result, plaintiff's good name and reputation were injured and that plaintiff suffered various other injuries. Plaintiff also alleged as to Spotlight III that it was "understood by the general public to mean that Parkside was owned or operated by

known members of the crime syndicate and that its owner and operator Joseph Colucci was a member of the Chicago Crime syndicate." As to Spotlights I and II, plaintiff alleged that on information and belief "the Commission reprinted, xeroxed and in various other ways republished Spotlight and Spotlight—Part II on numerous occasions after August 3, 1969."

In Count II, plaintiff realleged all of Count I but added that the "Commission acted with reckless disregard for the truth of such statements."

In Count III, based on the same three Spotlights, but with additional allegations, plaintiff pleaded what the trial court concluded was a cause of action for interference with Parkside Motor's business expectations.

On February 24, 1972, defendant moved for summary judgment. Defendant argued that any cause of action based on Spotlights I and II was barred by the 1-year statute of limitations on libel actions and that any action based on Spotlight III was barred by defendant's protected right (privilege) to report utterances of official governmental bodies. Affidavits were filed by both parties on the motion for summary judgment. After briefs were filed by both parties, the trial court on May 5, 1972, dismissed so much of Counts I and II as were based on Spotlights I and II because of the statute of limitations. Plaintiff was then given leave to amend his complaint on the subject of republication. He never did so.

On May 23, 1972, defendant filed a motion to dismiss the entire complaint on the ground of laches. On June 29, 1972, the trial court dismissed all of Counts I and II on the ground of laches,[1] but denied the motion as to Count III.

On July 18, 1972, defendant moved to dismiss Count III "on the grounds previously stated" and because it failed to state a cause of action. Defendant argued that Count III was really Counts I and II under another name and that plaintiff should not be allowed to proceed on the same facts under merely another name since to do so would allow circumvention of the 1-year statute of limitations for libel and the first amendment constitutional requirements governing libel actions. Defendant also argued that plaintiff had not pleaded the essential elements for a malicious interference with contractual rights. Plaintiff responded that he pled interference with business expectations, not contractual rights.

---

[1] In the court's order, the trial judge never mentioned his earlier dismissal of parts of Counts I and II on the ground that they were barred by the statute of limitations. However, this dismissal clearly referred to all of Counts I and II.

On May 3, 1973, the trial court issued a "Memorandum Opinion and Ruling on Motion to Dismiss." In it, the trial judge stated that Counts I and II were dismissed on the ground of laches.[2] He found as to Count III: (1) that plaintiff had pled a cause of action for malicious interference with business expectation, not for libel; (2) that because there was no showing of any prejudice to defendant due to plaintiff's delay in bringing the action, the claim was not barred by laches; (3) that plaintiff pled malicious interference with his business expectations, not interference with his contractual relations; (4) that because plaintiff failed to allege a malicious intent on defendant's part in Count III, he failed to state a cause of action denominated malicious interference with business expectations; and (5) that, in any event, defendant's actions were privileged because it was merely reporting governmental proceedings. The trial court concluded that because "of defendant's worthwhile purpose in disseminating the contents of its publication 'Spotlight' as expressed in the complaint [plaintiff disputes this] coupled with plaintiff's tolerance of a second and third publication of the falsehood eliminates any reasonable possibility of plaintiff now alleging facts showing that defendant intentionally *and* maliciously interferred with plaintiff's business relations." Consequently, the trial court did not grant leave for plaintiff to amend his complaint, but dismissed Count III, and hence, the remainder of plaintiff's complaint.

This appeal presents three issues: (1) was the trial court correct in dismissing those parts of Counts I and II based on the first two Spotlights on the ground that the statute of limitations had run; (2) was the trial court correct in dismissing those parts of Counts I and II based on Spotlight III because of laches; and (3) was the trial court correct in dismissing Count III for failure to state a cause of action.

## I

■ Counts I and II of plaintiff's complaint sounded in libel. Both counts were based, in part, on Spotlight I, published in October 1967, and on Spotlight II, published in June 1968. However, plaintiff did not file his complaint until August 1970. The statute of limitations for libel is 1 year. (Ill. Rev. Stat. 1971, ch. 83, par. 14.) It is thus clear that based on the initial dates of publication, any libel action based on the first two Spotlights was barred by the statute of limitations.

Plaintiff attempts to toll the state of limitations with an allegation that "Plaintiffs are informed and believe that the Commission reprinted,

---

[2] The trial judge again did not mention his earlier ruling on the statute of limitations.

xeroxed and in various other ways republished Spotlight and Spotlight—Part II on numerous occasions after August 3, 1969."

However, such an allegation is patently insufficient to toll the statute of limitations. Plaintiff's allegation is too vague and general to allow either opposing counsel or the court to intelligently determine where and when republications, if any, took place. It is not an allegation of fact but, quite clearly, a conclusory statement on plaintiff's part.

In defendant's motion for summary judgment, the question of the running of the statute of limitations was directly put in issue. Plaintiff made no attempt to be more specific but, instead, relied on the allegation in his complaint. However, where the statute of limitations is involved, a precise date is necessary. (*Larkin v. Gerhardt*, 21 Ill.App.2d 122, 157 N.E.2d 426 (abstract opinion).) In *Larkin*, the plaintiff sued for alleged libel and slander. In his complaint, the plaintiff had alleged republication of the alleged defamation "on or about" February 9, 1957. The reviewing court found such an allegation insufficient, stating:

> "Proof of a precise date is necessary where the statute of limitations is involved. The expression 'on or about' is usually construed as approximately; it is sufficient where a particular date is not material. But where an exact time is essential, as it is here, the expression is too vague. Where the statute of limitations is involved, the expression has been held fatal to the pleadings. In our opinion the date was not alleged with sufficient certainty. [Citations.] (Slip opinion at 3.)

Similarly, in *Scott Paper Co. v. Fort Howard Paper Co.* (E.D. Wis. 1972), 343 F.Supp. 229, the defendant's counterclaim stated that the alleged libel commenced "In or about 1957" and that plaintiff "is still enabled to make use of false information." The court construed such allegations to indicate that the libel was continuing to the date of filing of the counterclaim. However, the court found such allegations insufficient.

> "[N]o *specific* allegation of publications of the allegedly libellous material within the two year limitation period is contained in the counterclaim.
>
> \* \* \* No publications after [the statute had run] are set forth in the pleadings so that opposing counsel can intelligently take a position with respect to the question of the applicability of the statute of limitations. Neither can the court assess with any certitude the validity of the parties' respective positions. Under the circumstances we hold that Fort Howard \* \* \* must set forth specifically those publications within the two year limitation period for which it seeks relief." (343 F.Supp. 229, 235.)

See *Seltzer v. Fields* (1963), 20 App.Div.2d 60, 244 N.Y.S.2d 792.

In the instant case, publication of the first two Spotlights on October 26, 1967, and June 24, 1968, was admitted. However, plaintiff did not file his complaint until August 3, 1970. Plaintiff's mere allegation that republication occurred subsequent to August 3, 1969, without accompanying details or information is insufficient to toll the statute of limitations. Plaintiff was specifically granted leave by the trial court to amend his complaint as to republication of Spotlights I and II, but failed to do so. The object of pleadings is to apprise opposing counsel of the facts which give rise to plaintiff's claim so that due preparation may be made for trial. (*In re Estate of Flynn*, 133 Ill.App.2d 159, 272 N.E.2d 744.) Plaintiff failed to provide either opposing counsel or the court facts which would give substance to his allegation. Without such facts, the running of the statute of limitations was evident on the face of the pleadings.

Accordingly, that part of the trial court's order dismissing those parts of Counts I and II based on Spotlights I and II is affirmed.

II

The next issue presented is whether the trial court correctly dismissed those parts of Counts I and II based on Spotlight III because of laches.[3] Spotlight III was published on November 6, 1969. Plaintiff filed his complaint on August 3, 1970. Plaintiff was thus within the applicable 1-year statute of limitations period for libel.

To avoid the apparent timeliness of plaintiff's complaint, defendant argues that plaintiff blended all three Spotlights into a continuous course of conduct. Defendant contends that because plaintiff's delay on the first two Spotlights was unexplained and unexcused, laches equally applies to the third Spotlight. Defendant thus imputes the delay on Spotlights I and II to Spotlight III.

■■ However, defendant's argument ignores the settled legal principles regarding newly published or repeated defamations. For it is clear that each repetition of slander is actionable. (*Wheeler v. Dell Publishing Co.* (7th Cir. 1962), 300 F.2d 372.) The fact that an individual may have ignored an earlier defamatory statement is no defense to a later actionable statement. Each repetition of the slander is, in and of itself, actionable. Defendant's argument would allow an individual to defame with impunity once the initial defamation had been overlooked for 1 year. Such is not the law. The question thus becomes whether any libel action based on Spotlight III when considered by itself, is barred by the doctrine of laches.

---

[3] Although the trial judge indicated that he was dismissing all of Counts I and II due to laches, as set out above, parts of Counts I and II had already been dismissed due to the statute of limitations. Since the trial judge was correct on the issue of the statute, only those parts of Counts I and II based on Spotlight III are now before us.

Laches is such a neglect or omission to assert a right, taken in conjunction with lapse of time and other circumstances causing prejudice to the opposite party, as will operate as a bar in a court of equity. (*Anundson v. City of Chicago*, 15 Ill.App.3d 1032, 305 N.E.2d 376.) A court of equity will be slow to apply the doctrine when there is no change in the situation of the parties to the prejudice of defendant during the delay. Mere delay short of the statutory period of limitations will not be laches where there are no circumstances which place defendant in a worse position because of the delay. (*Dixmoor Golf Club, Inc. v. Evans*, 325 Ill. 612, 156 N.E. 785.) An essential element to a showing of laches is prejudice to the party asserting laches. (*Gill v. Gill*, 8 Ill.App.3d 625, 290 N.E.2d 897.) There is no absolute rule by which laches can be determined, and what facts will combine to constitute laches depend on the circumstances of each case. *People ex rel. Fleming v. Conlisk*, 11 Ill. App.3d 520, 299 N.E.2d 537.

■■ In the instant case, there was never any showing in the pleadings, in the briefs, or in the arguments of prejudice to defendant. This is not a case where plaintiff's delay has resulted in evidence being lost or the dimming of witnesses' memories. Nor is this a case where plaintiff's delay has caused any change in the situations of the parties. In fact, defendant's only claim of prejudice is the actual filing of this lawsuit. We merely note that if such were the law, every suit filed in equity would be barred by laches. Rather, in a determination of whether laches will bar a particular cause of action, all the circumstances of each case must be considered. This action was filed within 1 year of the publication of Spotlight III and thus, within the statute of limitations. Defendant has made no showing of a change of position or prejudice because of plaintiff's delay. Without such a showing, it was error to dismiss for laches those parts of Counts I and II based on Spotlight III.

Defendant, however, argues that the dismissal of those parts of Counts I and II based on Spotlight III can be sustained on another theory. Defendant notes that Spotlight III did not specifically name plaintiff. Plaintiff was thus forced to plead extrinsic facts and circumstances to establish his identification with the publication. As such, the publication was not libel per se. When a publication is not libelous per se, special damages must be pled with particularity. Defendant contends that plaintiff did not plead special damages and, thus, those parts of Counts I and II were properly dismissed.

■■■ We agree with defendant that where an individual is not named in the defamatory material, he must plead colloquium to establish that the publication was defamatory as to him. (*People v. Spielman*, 318 Ill. 482, 149 N.E. 466.) In such cases, the material is not libel per se and

consequently, special damages must be alleged with particularity. (*Tiernan v. East Shore Newspapers, Inc.*, 1 Ill.App.2d 150, 116 N.E.2d 896.) However, whether the instant publication was libel per se or whether it required allegations of extrinsic facts and circumstances (see *Hambric v. Field Enterprises, Inc.*, 46 Ill.App.2d 355, 196 N.E.2d 489), was not presented to or decided by the trial court. Consequently, we express no opinion as to those questions. Assuming, without deciding, that plaintiff did have to plead special damages, in this case, that requirement was certainly met. Plaintiff alleged that as a result of Spotlight III, plaintiff's business and credit reputation were damaged; plaintiff has been unable to obtain insurance; plaintiff has been restricted in his ability to obtain loans; plaintiff has been the object of special surveillance by the police department; plaintiff has been prevented from doing business with the State of Illinois and Cook County; plaintiff has suffered great mental anguish; and, plaintiff has lost business at Parkside. While perhaps not all plaintiff's allegations are cognizable elements of damage, they were sufficiently particular to withstand either a motion to dismiss or a motion for summary judgment.

Accordingly, the order of the trial court dismissing those parts of Counts I and II based on Spotlight III is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

## III

In Count III of his complaint, plaintiff alleged the publication of all three Spotlights; that defendant urged the public to cease patronizing Parkside; and that, defendant urged governmental authorities to cease doing business with Parkside. Plaintiff urges that this course of conduct amounts to the tort of interference with prospective economic advantage.

During oral argument, defendant stated that it would not concede that such a cause of action exists in Illinois. However, it is clear that such a cause of action is recognized. (*Doremus v. Hennessy*, 176 Ill. 608, 52 N.E. 924; *City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill.App.3d 359, 300 N.E.2d 331.) The fact that the interference is caused through libel or slander does not nullify the cause of action's validity. (*Coffey v. MacKay*, 2 Ill.App.3d 802, 277 N.E.2d 748.) In its brief, defendant attacks Count III on two other grounds.

First, defendant contends that Count III is really only Counts I and II under another name. Defendant points to the fact that the same three Spotlights underlie all three counts. Defendant argues that plaintiff should not be allowed to avoid the 1-year statute of limitations and other strict requirements pertaining to libel merely by changing the name of the tort.

812

■■ ·Relying on *New York Times Co. v. Sullivan*, 376 U.S. 254, defendant argues that "mere labels" of State law cannot be used to avoid and defeat preferred first amendment rights of expression. However, other than the official report privilege,[4] defendant has raised no first amendment claims. Defendant has not claimed that plaintiff is a public official (*New York Times Co. v. Sullivan*) or a public figure (*Curtis Publishing Co. v. Butts*, 388 U.S. 130), or that plaintiff was involved in an event of public or general interest. (*Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29.) Since defendant has made no such claims, *New York Times Co.* and its progeny are simply not applicable.

Defendant next argues that plaintiff should not be allowed to circumvent the 1-year statute of limitations applicable to slander by the mere device of changing the nomenclature of the alleged tort. Defendant relies on *Noel v. Interboro Mutual Indemnity Insurance Co.* (1968), 31 App. Div.2d 54, 295 N.Y.S.2d 399, *aff'd* (1971), 29 N.Y.2d 743, 326 N.Y.S.2d 396. However, in both *Noel* and *Morrison v. National Broadcasting Co.* (1967), 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572, upon which *Noel* relied, the plaintiffs never alleged the specific elements necessary to establish the tort of interference with prospective economic advantage. (*Coffey v. MacKay*.) Rather, in both cases, the plaintiffs alleged only the traditional elements of defamation and concluded that their prospective economic advantage had been damaged. In the instant case, plaintiff's additional allegations in Count III were never challenged by defendant. Consequently, *Noel* and *Morrison* are inapposite.

· Moreover, defendant's argument would result in a rule whereby plaintiffs are restricted in pleading their theories of the action by what defendant could or would plead if given the same set of facts. However, the character of a cause of action is determined by the allegations contained in plaintiff's written declaration. (*Kelley v. Baggott*, 273 Ill.App. 580.) It is not unusual for one particular set of operative facts to give rise to different actions. (*Doerr v. Villate*, 74 Ill.App.2d 332, 220 N.E.2d 767.) It is then up to plaintiff, by including or omitting certain factual allegations, to frame a particular cause of action or actions. See *Allen v. Komajda*, 130 Ill.App.2d 1018, 266 N.E.2d 456.

■■ In the instant case, on the facts alleged, plaintiff could have pleaded counts sounding only in libel. However, on additional factual allegations, plaintiff also pled a count of interference with prospective economic advantage. The fact that some of the same allegations were present in both theories is irrelevant. For it is the additional allegations found in Count III that allow it to stand independent of Counts I and

---

[4] To be discussed later.

II. As the court in *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 16 Ill.App.3d 709, 714, 306 N.E.2d 549, *rev'd on other grounds*, 61 Ill.2d 129, 334 N.E.2d 160, stated:

> "Defamatory statements may in themselves give rise to a cause of action for libel or slander and, at the same time, become the means by which the torts of interference with contractual relationships or prospective economic advantage are committed. In the latter, the means by which the tortious interference is committed does not change the nature of the cause of action. Moreover, the means by which the tortious interference is committed does not subject the action to a limitation period imposed upon the prosecution of an entirely separate and distinct cause of action."

While we agree that a plaintiff may not create the tort of interference out of a libel action merely by alleging damage to his business, where a plaintiff alleges that defendant urged others to cease doing business with plaintiff for false and defamatory reasons, that tort is separate and distinct and governed by the 5-year statute of limitations. Ill. Rev. Stat. 1971, ch. 83, par. 16.

Defendant's final argument is that assuming plaintiff properly pled interference with prospective economic advantage in Count III, its report of the Senate Subcommittee proceedings was privileged, and thus plaintiff must plead and prove actual malice, or a reckless disregard for the truth on the part of defendant to overcome the privilege.

It must be initially noted that there is some confusion as to whether defendant's challenge to Count III was a motion to dismiss (Ill. Rev. Stat. 1971, ch. 110, par. 45), or a motion for summary judgment (Ill. Rev. Stat. 1971, ch. 110, par. 57(2)). While the motion was technically labeled a "motion to dismiss," it incorporated defendant's earlier "motion for summary judgment" and the attached affidavits. Such a procedure is admittedly unusual. However, the affidavits and counteraffidavits submitted on the motion for summary judgment are contained in the record. Moreover, it appears that the trial court considered those affidavits in his ruling on Count III. In this court, both parties have urged that the motion be considered one for summary judgment. In view of all the circumstances, it appears no useful purpose would be served by considering the motion only as one to dismiss and thus not consider the affidavits since the motion for summary judgment (with the same affidavits) would only be renewed upon a remandment. Consequently, the motion will be considered as one for summary judgment.

■■ There can be no doubt that a privilege does exist to report governmental proceedings. (*Lulay v. Peoria Journal-Star, Inc.*, 34 Ill.2d 112, 214 N.E.2d 746.) However, as *Lulay* makes clear, that privilege is not

absolute. For the privilege to work as a defense, two requirements must be fulfilled: (1) it must be an accurate and complete or a fair abridgement of such proceedings; and (2) not made solely with malice, that is, made solely for the purpose of causing harm to the person defamed.

As can be seen from the nature of the requirements, the first requirement must be pled and proved by defendant. The second requirement only comes into play once the privilege is asserted. At that time it is available to plaintiff as a "defense" to the privilege. While it is plaintiff's duty to plead and prove the second requirement, plaintiff is not required to anticipate the defense of privilege. Consequently, the existence or nonexistence of malice is never reached until the defendant asserts the defense of privilege and adequately establishes the report's accuracy. The question of privilege in the instant case will thus first turn on defendant's establishment of the report's accuracy.

To establish the defense of privilege, defendant attached three exhibits to its motion for summary judgment. One exhibit was a chart admitted into evidence before the Senate Subcommittee. It contained a picture of a Joseph Colucci, but no other identifying information. The second exhibit, a FBI report of a Joseph Colucca (either misspelled or a different person), was also admitted into evidence before the Senate. That report merely gave Colucca's sex, height, weight, and date and place of birth. It stated that he was 40 in 1931 and born in Italy. The third exhibit was a Chicago police report of a Joseph Colucci admitted into evidence before the Senate. In that report, it was stated that Colucci was born in 1905 (26 in 1931, not 40) and "Subject is alleged to own a Automobile Agency on West Madison Street." Nowhere in defendant's exhibits is *Parkside Motors* ever mentioned.

Plaintiff, Joseph Colucci, submitted an affidavit in opposition to the motion for summary judgment. He there stated that he was born in Chicago, not Italy; that he was born in 1907 (24 in 1931); and that the picture on defendant's first exhibit is not his picture.

■■ While this court was not provided with the transcript of the arguments before the trial court, in the trial judge's written opinion, he stated:

> "The defendant Commission concedes that it erred in identifying the plaintiff as the Colucci named in the subcommittee hearings."

The trial judge's statement, together with the factually conflicting exhibits and affidavits, lead to the inexorable conclusion that there was a triable issue of fact on the accuracy of defendant's reports. As such, summary judgment was improper.

Defendant relies on a line of cases typified by *Gawel v. Chicago American Publishing Co.*, 1 Ill.App.3d 481, 274 N.E.2d 628, which hold that the privilege is not defeated even though the official proceeding relied on

was itself inaccurate. However, that rule of law is inapplicable in the instant case. For it is the official proceeding that must contain the mistake. For the privilege to work as a defense, defendant must accurately report the "mistake." In the instant case, there is no evidence that the Senate Subcommittee incorrectly concluded that the Joseph Colucci named in the various reports was the Joseph Colucci who owned Parkside Motors. Indeed, Parkside Motors was never mentioned during those proceedings. Rather, on the exhibits and affidavits contained in the present record, it appears that it was the Commission that incorrectly concluded that the Joseph Colucci named in the Senate Subcommittee proceedings was the same Joseph Colucci who owned Parkside Motors. As such, the mistake is attributable to the Commission and not the official proceedings. Consequently, *Gawel* and similar cases afford defendant no solace.

Since defendant never established the defense privilege, it is unnecessary to consider defendant's arguments regarding the existence or nonexistence of malice in defendant's actions. However, since Count III must be remanded for further proceedings, we do note that plaintiff's pleadings were sufficient to also put that factual determination in issue. See *Lulay v. Peoria Journal-Star, Inc.*

Accordingly, for the reasons given, that part of the circuit court's order dismissing those parts of Counts I and II based on Spotlights I and II is affirmed; that part of the order dismissing those parts of Counts I and II based on Spotlight III is reversed and remanded for further proceedings not inconsistent with the views expressed herein; that part of the order dismissing Count III is reversed and remanded for further proceedings not inconsistent with the views expressed herein.

Affirmed in part; reversed and remanded in part.

DOWNING, P. J., and LEIGHTON, J., concur.