**Morris D. OBERMAN, Plaintiff-Appellee, Cross-Appellant,**

v.

**DUN & BRADSTREET, INC., Defendant-Appellant, Cross-Appellee.**

**No. 77–1896.**

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1978.

Decided Nov. 17, 1978.

As Corrected Nov. 21, 1978.

Rehearing and Rehearing En Banc Denied Jan. 17, 1979.

Swygert, Circuit Judge, filed dissenting opinion.

Lawrence Gunnels, Reuben & Proctor, Chicago, Ill., for defendant-appellant, cross-appellee.

Wayne B. Giampietro, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before SWYGERT, Circuit Judge, MOORE, Senior Circuit Judge,* and BAUER, Circuit Judge.

BAUER, Circuit Judge.

In this diversity suit for alleged libel, the plaintiff, Morris D. Oberman, claims that a confidential credit report issued by Dun & Bradstreet, Inc., understated his assets, and that as a result, the Prudential Realty Company refused to sell or lease certain property to him. At trial, the parties stipulated (1) that Prudential Realty was not a subscriber of Dun & Bradstreet's credit report service; (2) that Dun & Bradstreet never sent the report on Oberman to Prudential Realty; (3) that the report was mailed to the First National Bank of Skokie, Illinois, a subscriber of Dun & Bradstreet; and (4) that one of Prudential's salesmen was a director of the bank. After the jury re-

* The Hon. Leonard Page Moore, United States Court of Appeals for the Second Circuit, is sitting by designation.

turned a verdict of $35,000 for the plaintiff, the defendant filed a motion for judgment notwithstanding the verdict which was denied by the district court.

The sole issue on appeal is whether Dun & Bradstreet can be held liable for the unauthorized republication of the allegedly libelous credit report. The question is governed by Illinois law since the case is a diversity action, *Porcella v. Time, Inc.,* 300 F.2d 162 (7th Cir. 1962), but there seems to be only one Illinois decision that is squarely on point. In *Clifford v. Cochrane,* 10 Ill. App. 570 (1882), the court declared that "no liability attaches to the author of the libel for such reproduction, unless it is made by his authority or consent, either express or implied." *Id.* at 577. It appears, then, that under Illinois law, Dun & Bradstreet cannot be held liable since it did not authorize the republication of the confidential report to the non-subscribing realty company. On the contrary, the defendant expressly declared on the face of the report that the credit information was furnished for the exclusive use of the subscriber under the subscription contract.[1]

We cannot ignore, however, that the *Clifford* decision was rendered by an intermediate court nearly one hundred years ago, and that, since then, many states have abandoned the rigid "expressed or implied authorization" rule in favor of a "natural or probable consequence" test. That is, in many jurisdictions, the author of a libelous statement may be held liable for a republication that is a "natural and probable consequence" of the original publication. See, e. g., *Davis v. National Broadcasting Co.,* 320 F.Supp. 1070, 1072 (E.D.La.1972); *Cobb v. Garlington,* 193 S.W. 463, 468 (Tex.Civ. App.1970); *Weaver v. Beneficial Finance Co.,* 199 Va. 196, 98 S.E.2d 687 (1957).

Nevertheless, even assuming that the Illinois courts would apply the "natural and probable consequence" standard to the case at hand, we find nothing in the record to suggest that the republication of the Dun & Bradstreet report followed in the ordinary course of events from the original publication. Nor can we agree that, on these facts, such republication should be deemed to be a "natural and probable consequence" as a matter of law. In this connection, what is most significant is (1) that the credit information was contemplated by both the bank and Dun & Bradstreet to be confidential; and (2) that the republication apparently resulted from the mere fortuity that one of the bank's directors was also a salesman for the realty company.[2]

It is therefore our conclusion that a directed verdict should have been entered in the defendant's favor at the close of the plaintiff's case since there was no evidence to suggest that the republication was either

1. Specifically, the report contained the following language:
   "THIS REPORT MAY NOT BE REPRODUCED IN WHOLE OR IN PART IN ANY FORM OR MANNER WHATEVER. It is furnished by DUN & BRADSTREET, INC., in STRICT CONFIDENCE at your request under your subscription agreement for your exclusive use as a basis for credit, insurance, marketing and other business decisions and for no other purpose. These prohibitions are for your own protection—your attorney will confirm the seriousness of this warning."
   Dun & Bradstreet subscribers are instructed on how to interpret the information contained in the credit reports, and this, apparently, is the rationale for the prohibition on republication to non-subscribing third parties.

2. We do not share the view of the dissenting opinion that the Illinois courts would hold "natural and probable" to mean "reasonably foreseeable" in determining whether the first pub-

lisher of a libel is liable for republications. It is well settled in Illinois that each republication of a libel constitutes a separate cause of action which starts the statute of limitations running anew. See *Colucci v. Chicago Crime Commission,* 31 Ill.App.3d 802, 334 N.E.2d 461 (1st Dist. 1975). Therefore, unlike the negligence claim in *Renslow v. Mennonite Hospital,* 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250 (1977), upon which the dissent relies, "claims for all foreseeable republications of libels would result in 'perpetual liability for a single wrongful act.'" *Midwest Bank Builders, Inc. v. Dun and Bradstreet, Inc.,* No. 76 C 1585, slip op. at 6 (N.D.Ill.1978). Moreover, we cannot agree that Dun and Bradstreet could have "reasonably foreseen" that one of the subscriber's directors was also a salesman for a realty company that was contemplating a commercial transaction with the subject of the confidential report.

authorized by Dun & Bradstreet or the natural and probable consequence of its original act. Accordingly, the judgment of the district court is

REVERSED.

SWYGERT, Circuit Judge, dissenting.

I respectfully dissent. Since this case began over ten years ago, different aspects of it have been before this court on two occasions.[1] Both times we ruled in favor of the plaintiff, and I believe we should do so again here. The majority has taken an unduly restrictive view of the law with respect to liability for republication of libel, and has failed in its duty to attempt to decide this diversity case as would a modern Illinois court.

Inasmuch as this libel case is a diversity action, it is true that the question of liability for republication of libel is governed by Illinois law. *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is equally true, however, that this court is to decide this case as would the modern Illinois Supreme Court. *See Huff v. White Motor Corp.,* 565 F.2d 104 (7th Cir. 1977). As the majority has noted, there are apparently no decisions of the Illinois Supreme Court squarely on point. Thus, this court must decide what rule the Illinois

Supreme Court would adopt in a case such as this and apply it. *Huff v. White Motor Corp., supra.*[2]

As the majority has noted, the only Illinois authority directly on point is a decision rendered in an intermediate level appellate court nearly one hundred years ago.[3] Given that the Illinois Supreme Court has never addressed itself to the subject, the fact that there exists one lower court opinion rendered last century is not controlling. *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

Nor do I believe that the modern Illinois Supreme Court would regard that decision as controlling. In more recent cases, "it appears that the majority of state courts have moved away from the rigour of the authorization test and have held that the original publisher may be held liable for a republication which is either authorized or a 'natural and probable consequence' of the original publication." *Midwest Bank Builders, Inc. v. Dun & Bradstreet, Inc.,* No. 76 C 1585, slip op. at 3 (N.D.Ill., May 4, 1978). That the Illinois Court would follow this modern majority can be inferred from its recent decision in *Renslow v. Mennonite Hospital,* 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250 (1977).[4]

---

1. *Oberman v. Dun & Bradstreet, Inc.,* 460 F.2d 1381 (7th Cir. 1972) (genuine issue of material fact exists as to whether allegedly libelous credit report caused "special damages"); *Oberman v. Dun & Bradstreet, Inc.,* 507 F.2d 349 (7th Cir. 1974) (certain statements admissible under state of mind exception to hearsay rule; evidence sustains jury finding that libelous report issued by defendant was proximate cause of third party's refusal to sell or lease the building to plaintiff).

2. In *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), while discussing the formula employed to determine state law in diversity cases, the Supreme Court noted that "while the decrees of 'lower state courts' should be 'attributed some weight . . . the decision [is] not controlling . . .' where the highest court of the State has not spoken on the point. *King v. Order of United Commercial Travelers,* [333 U.S.] 153 at 160-161, 68 S.Ct. 488, 92 L.Ed. 608 . . . [T]he State's highest court is the best authority on its own law. If there be no decision by that court then federal au-

thorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956)." *Id.* at 465, 87 S.Ct. at 1782. *See also Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 606-15 (7th Cir. 1975).

3. *Clifford v. Cochrane,* 10 Ill.App. 570 (1882).

4. There is even some question as to the view the Illinois appellate court took on this matter in *Clifford v. Cochrane, supra.* In *Cochrane* a man gave a libelous interview to a reporter for a Chicago newspaper (the *Times*), which newspaper then published the interview. A San Francisco newspaper (the *Chronicle*) republished the interview, and this republication led to the damages which plaintiff suffered. The court stated:

By submitting to be interviewed, and knowing that the interview was to appear in the

In *Renslow* the Illinois court held that a child could recover for damages caused by negligent medical treatment rendered to its mother even before it was conceived. The court noted that it had "long recognized that a duty may exist to one foreseeably harmed though he be unknown and remote in time and place." 67 Ill.2d at 357, 10 Ill.Dec. at 488, 367 N.E.2d at 1254. This language also indicates that the court would interpret the phrase "natural and probable consequences" as meaning consequences which are "reasonably foreseeable." *See, e. g., Brown v. First National Bank of Mason City,* 193 N.W.2d 547 (Iowa 1972).

Recently forced to make the same determination that is before us today, the district court in *Midwest Bank Builders, Inc. v. Dun & Bradstreet, Inc., supra,* correctly concluded that the Illinois court would follow the "natural and probable consequences" rule on libel republications, but incorrectly assumed it would not apply the "reasonably foreseeable" interpretation of that rule. It based this assumption on the presumed fact that, unlike the negligence claim in *Renslow,* claims for foreseeable republications of libels would result in perpetual liability for a single act.

A careful reading of *Renslow,* however, reveals that such an assumption is unfounded. The test is not merely one of foreseeability, but of reasonable foreseeability. That qualification invokes the power of the judiciary to stop when unreasonableness becomes apparent. The *Renslow* court reached the same conclusion in rejecting a similar perpetual liability argument. It noted that "when such a case [of perpetual liability] is presented, the judiciary will effectively exercise its traditional role of drawing rational distinctions, consonant with current perceptions of justice, between harms which are compensable and those which are not." 67 Ill.2d at 358, 10 Ill.Dec. at 489, 367 N.E.2d at 1255.[5] There is thus every reason to believe that the Illinois court would apply the "reasonably foreseeable" interpretation.

Having determined the state of Illinois law "after giving 'proper regard' to relevant rulings," that law must be applied to the facts of the case at hand. *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. at 465, 87 S.Ct. at 1783. Such an application leads to the conclusion that Dun & Bradstreet is liable to Oberman for the damage caused by the republication of its libelous credit report.

That the republication was the proximate cause of the damage has already been determined. *Oberman v. Dun & Bradstreet, Inc.,* 507 F.2d 349 (7th Cir. 1974). The sole remaining question is whether such a republication should have been reasonably foreseeable to Dun & Bradstreet. Despite the *caveat* against reproduction placed in small type at the bottom of the credit report,[6] it is

---

*Times,* he impliedly authorized its publication in that paper, and is therefore responsible for such damages as were the natural and proximate consequences of that publication.

The special damages occasioned by the loss of the plaintiff's position as architect, was caused by the republication of the article in the *Chronicle.* We do not think such republication can be regarded as the necessary, or the natural and proximate consequence of the publication in the *Times.*

10 Ill.App. at 576.

**5.** Thus the perpetual liability argument can be refuted without reference to the statute of limitations, which in Illinois apparently starts running anew with each republication of a libel constituting a separate cause of action. *See Colucci v. Chicago Crime Commission,* 31 Ill. App.3d 802, 334 N.E.2d 461 (1st Dist. 1975). The liability is cut off, not only when the statute has run, but whenever the relationship to the original publisher becomes too attenuated, that is, when the republication can no longer be said to be reasonably foreseeable. This determination is peculiarly within the province of the judiciary, and is part of the "traditional role of drawing rational distinctions, consonant with current perceptions of justice" to which the *Renslow* court referred.

**6.** There is some question as to the exact wording of this *caveat.* One version reads as quoted by the majority in the margin, and this version was cited by Dun & Bradstreet in its brief. In paragraph 11 of its answer to Count I of Oberman's complaint, however, Dun & Bradstreet states that a document identified as defendant's "Exhibit A" is a complete copy of the financial report which it compiled on Oberman. Defendant's "Exhibit A," reproduced in the appendix to Dun & Bradstreet's brief, carries the following legend at the bottom:

not unreasonable to conclude that one should foresee the use of such information by a bank director if that use would serve his own interests. The *caveat*, which states that "[t]hese prohibitions are for your own protection," would likely be ignored by one seeking to further his own interest through use of the report. And to say that such intentional use would be illegal, amounting to violation of a contract between the customer and Dun & Bradstreet, does not absolve the defendant of liability. Such a fact may give defendant a cause of action for breach of contract against its customer, but it does not amount to a defense in the libel action brought by Oberman.

It must be remembered that all that is at issue here is the extent of liability of one who has published a libel. Dun & Bradstreet was not found liable because its customer's agent used a confidential report to further his own interest. Dun & Bradstreet was found liable because it published a liable which was the proximate cause of Oberman's injury. Foreseeing the republication of such a libel in a business context is anything but unreasonable; on the contrary, it would be unreasonable to assume that the bank's director, upon receiving a damaging credit report and not knowing it to be libelously false, would ignore it in the making of a decision in his other business. The contract provision against reproduction cannot absolve Dun & Bradstreet from responsibility for libel published via its credit reports; to guard against that, it must take care not to publish false reports in the first place.

The judgment entered by the district court following the verdict of the jury should be affirmed.

This report is furnished by DUN & BRADSTREET, Inc., in STRICT CONFIDENCE at your request under your subscription agreement for your exclusive use as a basis for credit, insurance, marketing and other business decisions and for no other purpose. DUN & BRADSTREET, Inc. does not guarantee the correctness of this report and shall not be liable for any loss or injury caused by the neglect or other act or failure to act on the part of said company and/or its agents in procuring, collecting or communicating any information.