LYNCH, Circuit Judge,
dissenting.
With respect, I dissent. The majority opinion, in two holdings, adopts new rules for this circuit which, I believe, are wrongly decided and inconsistent with Supreme Court and circuit precedent.
The majority opinion holds that a trial court, to whom the ultimate decision on qualified immunity is granted, erred in granting qualified immunity; it committed error, the majority says, because a jury *138 found by a general verdict that Officer Jones had used excessive force.
The majority opinion also adopts a new rule, a “deemed abandonment” theory, enters judgment itself against Officer Jones, and prohibits the district court from considering whether to grant Officer Jones’ motion for new trial, which the district court previously had deemed moot. In situations where a defendant wins judgment as a matter of law (JMOL), but the trial judge erroneously determines that the defendant’s accompanying motion for new trial is moot, the majority opinion holds that a defendant will be deemed to have abandoned the new trial motion where he did not ask the district court to reconsider its mootness ruling and, having failed to do so, he did not, as appellee, request on appeal that the new trial issue be remanded. Jennings, the appellant, has never briefed the new trial issue or asserted that Jones has either abandoned or waived his new trial motion. The majority sua sponte has now precluded Jones from returning to the district court to ask it to reconsider his motion for a new trial, a motion the court would likely grant.
I. Relevant History
It is worth explaining how this situation, which arose from two mistakes by the trial judge (one of which the judge later acknowledged), came to pass.
The plaintiffs were permitted to amend their complaint shortly before the deadline for filing pretrial motions to give names to the John Doe state trooper defendants, including Officer Jones, and bring suit against them in their individual capacities. By the time of the pre-trial conference, the district court had apparently indicated a disinclination to resolve the matters of defense by summary judgment, noting that light would be shed on the facts at trial.
At the close of the plaintiffs evidence at trial, the officers moved for a ruling on their defenses, including the qualified immunity defense under Rule 50. The district court granted JMOL to defendants on a number of claims but, apparently overlooking the immunity issue, said the remaining claims stated an issue for the jury. At the close of all the evidence, but before the verdict, the remaining defendants renewed their motion for JMOL. The court granted judgment to all but three defendants, including Jones. After the verdict, the court ruled that it had erred in not granting the Rule 50 JMOL motion with respect to the § 1983 excessive force claim and the state law battery claim against Jones. Jennings v. Pare, No. 03-572-T, 2005 WL 2043945, at *5 (D.R.I. Aug.24, 2005).
The jury returned a verdict against Jones on the excessive force claim under the Fourth Amendment and awarded damages of $301,100. The jury verdict simply stated, “As to the claims by Adam Jennings against Kenneth Jones, Fourth Amendment claim for excessive force, the jury finds for the plaintiff, Adam Jennings.” There were no special interrogatories which the jury answered to make specific findings of fact.
After the jury verdict, Jones filed three motions: for remittitur under Rule 59(e); for JMOL under Rule 50(b); and for a new trial under Rule 59. The trial court allowed Jones’ motion for JMOL and decided that the other two motions were, accordingly, moot. Id. at *1. Judgment was entered for Jones simultaneously with the court’s ruling on the three motions. In light of the requirements of Rule 50(c)(1), the court erred in holding the new trial motion was moot; it should have ruled on the merits of the new trial motion.
In granting JMOL, the court held that despite the jury verdict Officer Jones was *139 nonetheless entitled to immunity. Id. The district court found that, accepting that the force used was unreasonable and excessive, the officer was entitled to immunity under the second and third prongs of the analysis because (1) clearly established law did not fairly warn the officer his actions were unconstitutional, and (2) even if the law was clearly established so as to give the officer fair notice that his actions were unconstitutional, the court still concluded that “Jones reasonably could have believed that his utilization of the ankle turn control technique was lawful.” Id. at *10-11.
II. Qualified Immunity
Appellate review of the immunity conclusion is de novo. Whalen v. Mass. Trial Court, 397 F.3d 19, 23 (1st Cir.2005).
Two particular rules apply in this situation. Under Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), the question of immunity is an issue for the trial court, not the jury, to determine. Id. at 228, 112 S.Ct. 534. The Supreme Court has not yet addressed the question of what role jury findings play in the judicial immunity determination, nor has this circuit. See, e.g., Kelley v. LaForce, 288 F.3d 1, 7 n. 2 (1st Cir.2002) (“[T]he Supreme Court has not clearly indicated whether the judge may act as fact-finder when there is a factual dispute underlying the qualified immunity defense or whether this function must be fulfilled by a jury.”); Ringuette v. City of Fall River, 146 F.3d 1, 6 (1st Cir.1998) (“Something of a ‘black hole’ exists in the law as to how to resolve factual disputes pertaining to qualified immunity when they cannot be resolved on summary judgment prior to trial.”). No clear answer has emerged from the circuits. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996), cited by the majority, is not an immunity case and does not resolve this question, which we have recognized as being open in the years since Gasperini was decided.
Secondly, the merits inquiry about whether an officer used excessive force does not resolve the immunity inquiry. Saucier v. Katz, 533 U.S. 194, 204-06, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). A holding on the merits is not dispositive of the issue of qualified immunity. Cookish v. Powell, 945 F.2d 441, 443 (1st Cir.1991). Thus, whatever deference is owed to the jury findings on prong one of immunity, the court was free to grant immunity, as it did, on prongs two and three. The officer here could both have applied excessive force and, at the same time, be entitled to immunity: an officer in Jones’ position could have reasonably believed he was not violating constitutional rights. Saucier, 533 U.S. at 206, 121 S.Ct. 2151. The district court recognized this, and there is no inconsistency between its conclusion that Jones is entitled to immunity and the jury verdict.
The district court summarized its reasons for granting immunity[37]:
*140 First, Jennings failed to present any evidence that Jones’ actions deviated from the standard of conduct that should have been expected from an objectively reasonable police officer under the circumstances. Second, even if Jones’ use of the “ankle turn control technique” is viewed as amounting to excessive force it did not violate any “clearly established” constitutional prohibition. Finally, the undisputed evidence demonstrates that it was “objectively reasonable” for Jones to believe that he was acting lawfully.
Jennings, 2005 WL 2043945, at *5.
In reviewing the district court’s grant of immunity on JMOL, I assume arguendo that the evidence is taken in the light most favorable to the jury verdict.[38]
A. Effect of the Jury’s Verdict
Two thoughts should be removed from the picture at the outset. First, Jones did not break Jennings’ ankle with reckless or callous indifference to Jennings’ federal rights. Second, he did not knowingly violate the law. The jury verdict cannot, as a matter of law, be taken to establish these points because they were not elements of the claim that went to the jury. There was no basis for punitive damages here. See Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (punitive damages under § 1983 available only “when the defendant’s conduct ... involves reckless or callous indifference to the federally protected rights of others”). Indeed, the law of this case is that the evidence was insufficient to support such a finding. See Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 210 (1st Cir.2006). Although the amended complaint sought punitive damages, the district court held that there was no basis in the evidence to instruct the jury on the issue. Further, plaintiff did not object to the lack of jury instructions on punitive damages, and he does not challenge the omission of such instructions on appeal. Moreover, on the evidence it is clear that Jones was not “plainly incompetent,” and he did not “knowingly violate the law.” Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Edüd 271 (1986). So denial of immunity cannot rest on those grounds.
In my view, the majority’s reversal of the trial judge’s grant of immunity undercuts the interests protected by the immunity doctrine. The purposes of granting qualified immunity include: avoiding “excessive disruption of government,” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); giving “a fairly wide zone of protection in close cases,” Roy v. Inhabitants of Lewiston, 42 F.3d 691, 695 (1st Cir.1994); allowing officers “reasonably [to] anticipate when their conduct may give rise to liability for damages,” Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); providing “ample room for mistaken judgments,” Malley, 475 U.S. at 343, 106 S.Ct. 1092; shielding officers from liability when the law did not clearly proscribe the ac *141 tions they took, Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); and protecting “all but the plainly incompetent or those who knowingly violate the law,” Malley, 475 U.S. at 341, 106 S.Ct. 1092. The common theme of protecting reasonable judgment calls by officers, such as this one, exists throughout qualified immunity law.
It is not inconsistent for an officer to have violated constitutional rights, as the jury found here, but still be entitled to immunity on the various prongs (described below) of the immunity test. See Sallier v. Brooks, 343 F.3d 868, 871-72, 879-80 (6th Cir.2003) (holding that prison clerks were entitled to immunity despite jury verdict against them because it was not clearly established at the time that mail from the courts was protected “legal mail”); Figg v. Schroeder, 312 F.3d 625, 636-37 (4th Cir.2002) (holding that officers were entitled to qualified immunity on first prong of test despite jury verdict because evidence at trial did not establish unreasonableness of seizures under the Fourth Amendment); Clue v. Johnson, 179 F.3d 57, 60, 61-62 (2d Cir.1999) (holding that transit authority director was entitled to immunity despite jury verdict for plaintiffs because law was not clearly established at the time that plaintiffs’ activities were constitutionally protected from employer retaliation); Warlick v. Cross, 969 F.2d 303, 310 (7th Cir.1992) (holding that, although jury found officer not to have had probable cause for arrest, officer was entitled to immunity because law was not clearly established as to circumstances in which officer found himself).
The majority reasons that the jury, by its general verdict, necessarily found that (1) Jennings had stopped resisting and had announced his prior ankle injury, and (2) Jones nonetheless increased the twisting pressure on Jennings’ ankle and broke it. The majority’s reasoning entails a bit of legal fiction, since we do not know what the jury found and these facts certainly were not necessary to the verdict.[39] On *142 this record, there is considerable ambiguity and no certainty about what underlying factual conclusions motivated the general verdict.
This is an important issue. It is true that where the question is whether there is sufficient evidence to support a jury verdict (the usual question on a motion for JMOL), the appellate court will take all facts in favor of the verdict. But there is no attack on the sufficiency of the jury verdict, as to at least the second and third prongs of the immunity analysis. The attack is on the trial judge’s separate conclusion, a determination assigned to the judge and not the jury, that Jones is entitled to immunity. This raises the question of how the judge, in evaluating immunity, is required to treat a general jury verdict, and that is precisely the type of black hole in the law we discussed in Ringuette, 146 F.3d at 6, and in Kelley, 288 F.3d at 7 n. 2.
Further, as a matter of logic, it does not necessarily follow from a rule that a general verdict will be upheld by taking facts in favor of the verdict when a number of theories could support the verdict, that the jury has found a particular combination of facts, or that the judge, on the immunity issue, must deem the jury to have found particular facts. Indeed, the majority acknowledges that the trial judge here thought the jury verdict was based on a different theory and facts other than the two facts the majority now insists were found.
These are important issues on which it would be helpful to have guidance from the Supreme Court. But ultimately this case need not resolve those issues because I believe the majority is wrong, even within its own set of assumptions. Even if we assume, arguendo,[40] that the rule that facts must be taken in support of the verdict permits the majority to assume its two facts, the district court’s finding of qualified immunity must nonetheless stand. I will assume arguendo that Jennings met the first prong. Even so, the officer is nonetheless entitled to immunity on the next two prongs.[41]
B. Second Prong: Clearly Established Law
Officer Jones was undisputably acting within the scope of his authority and his discretion. The burden then is on plaintiff to demonstrate the existence of clearly established constitutional law which the officer is said to have violated. Davis, 468 U.S. at 197, 104 S.Ct. 3012; Horta v. Sullivan, 4 F.3d 2, 13 (1st Cir.1993).
The second prong of the qualified immunity test asks whether the constitutional right in question was “ ‘clearly established at the time of the alleged violation’ such *143 that a reasonable officer would ‘be on notice that [his] conduct [was] unlawful.’ ” Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 61 (1st Cir.2004) (alterations in original) (quoting Suboh v. Dist. Attorney’s Office, 298 F.3d 81, 90 (1st Cir.2002)); see also Saucier, 533 U.S. at 202, 121 S.Ct. 2151. This inquiry is a specific one, in which it is necessary to consider the particular circumstances faced by the officer. See Saucier, 533 U.S. at 201, 121 S.Ct. 2151 (“This inquiry [under the second prong] ... must be undertaken in light of the specific context of the case, not as a broad general proposition.”); see also Brosseau v. Haugen, 543 U.S. 194, 199-200, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004); Suboh, 298 F.3d at 90. Although the facts of prior cases need not be “exactly on all fours with the facts of this case” in order to conclude that a right was clearly established, Suboh, 298 F.3d at 94, “the prior case law must give the officer reasonable notice that the specific conduct [he] is alleged to have committed in this litigation is unlawful,” Riverdale Mills, 392 F.3d at 66. Again, the burden is on the plaintiff to make this showing, and the district court correctly held that plaintiff had failed.
In the end, the majority’s holding that the law was so clearly established as to put the officer on clear notice that his overall use of force, even increasing force, when the detainee had stopped struggling (regardless of other circumstances) was unconstitutional rests on two propositions. The first is that clear notice is established by a single case from the Eleventh Circuit which is said to be so close to this case as to have put Jones on appropriate notice. The second is that there is no need for particularized notice because notice of general principles is enough. Indeed, the majority goes so far as to reason that it should have been perfectly obvious to Jones that his use of force was excessive, despite the fact that the only expert testimony was directly to the contrary and the district court, which heard the case, concluded otherwise. The jury verdict made no conclusion on this issue, nor could it have.
1. Lack of Prior Case Law
There is no First Circuit case which gave Jones appropriate notice, nor is there a clear consensus of other persuasive authority giving such notice.
To start, a single opinion from another circuit is not, as a matter of law, sufficient to meet the plaintiffs burden of showing the law is clearly established. In Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), the Supreme Court concluded that the law on a particular issue was not clearly established, and stated:
[Plaintiffs] have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.
Id. at 617, 119 S.Ct. 1692 (emphases added). Wilson rejected reliance on one case as sufficient. Id. at 616-17, 119 S.Ct. 1692. The case there, parenthetically, was a summary judgment case, id. at 608, 119 S.Ct. 1692, like Smith v. Mattox, 127 F.3d 1416 (11th Cir.1997), on which the majority relies.
In Brady v. Dill, 187 F.3d 104 (1st Cir.1999), we expressly adopted Wilson’s holding in concluding that the law was not clearly established at the time of the defendants’ conduct. Id. at 116. We also applied the Wilson rule without dispute in Savard v. Rhode Island, 338 F.3d 23, 28 (1st Cir.2003) (equally divided en banc *144 court). The majority thus cannot rely on the single decision of Smith v. Mattox to give fair notice.
Further, Smith does not provide such fair notice to the officer, but supports the view that immunity was correctly granted. Smith merely affirmed the district court’s denial of summary judgment on qualified immunity grounds because inferences, just barely, could be drawn that the force used was obviously and patently excessive. Id. at 1419. In Smith, the plaintiff had earlier threatened the officer with a baseball bat, but had then dropped the bat, run through a backyard, down a driveway, and into another street, and then returned to the driveway of his mother’s house, where the officer found him. Smith said he then docilely submitted to arrest, got down on the ground as requested, and offered no resistance. Nonetheless, the officer struck him a blow which broke his arm in multiple places. Id. at 1418. Notably, Smith held that other inferences would permit a finder of fact to conclude that the officer had behaved reasonably. That was because
even if Smith was not actively resisting arrest at the very moment the force was applied, he was before that moment; [the officer] could reasonably have believed that without some force restraining Smith, he would have resumed either his attacks or his flight. Thus, it was not unreasonable for [the officer] to think that he was entitled to use some force to put Smith into cuffing posture.
Id. Smith does not help Jennings; it helps Jones. The majority also argues that Jones offered no contrary precedent to Smith. That is not true, and the majority confuses who has the burden to show clear notice.
Other court of appeals cases, in addition to Smith, tend to support the constitutionality of Jones’ actions and so undercut plaintiffs claims that Jones was on clear notice from prior case law that his particular application of force was unreasonable. Many of these cases involve situations, as here, where officers were attempting to handcuff an individual who had been resistant. See Rodriguez v. Farrell, 294 F.3d 1276, 1278-79 (11th Cir.2002) (finding no excessive force, and noting that an officer need not credit an arrestee’s claims of pain, especially when the arrestee is in the process of being handcuffed); Jackson v. City of Bremerton, 268 F.3d 646, 650-53 (9th Cir.2001) (finding no excessive force where plaintiff suffered a fractured finger after officer pushed plaintiff to the ground for purpose of handcuffing her despite being told of preexisting back and shoulder injuries, and where plaintiff had earlier posed a threat to officers’ safety and ability to control a crowd); Huang v. Harris County, No. 00-20806, 2001 WL 822534, at *10 (5th Cir. June 22, 2001) (holding that force was reasonable where officer broke resisting arrestee’s thumb by twisting her wrist, in an effort to “prevent her from kicking him ... and place her in handcuffs”); Brownell v. Figel, 950 F.2d 1285, 1288, 1293 (7th Cir.1991) (finding no constitutional deprivation where officers employed two different pain techniques, application of pressure on the plaintiffs knuckles and on a nerve behind his jaw); Eberle v. City of Anaheim, 901 F.2d 814, 820 (9th Cir.1990) (upholding the use of a “finger control hold” to remove a belligerent spectator from a sports arena). Under these cases, an officer in Jones’ position could reasonably have concluded that his conduct was not unconstitutional.
2. Need for Particularity and Obviousness
For a variety of Fourth Amendment claims involving reasonableness and judgment calls, this circuit has required that *145 plaintiff refer to particularized prior cases with similar facts. E.g., Buchanan v. Maine, 469 F.3d 158, 168-69 (1st Cir.2006); Riverdale Mills, 392 F.3d at 65-66; Napier v. Town of Windham, 187 F.3d 177, 189 (1st Cir.1999). That is because the Fourth Amendment’s touchstone of reasonableness generally requires careful consideration of the totality of the circumstances. “[F]or the most part per se rules are inappropriate in the Fourth Amendment context,” and consideration of the “totality of the circumstances” is required. United States v. Drayton, 536 U.S. 194, 201, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002).[42]
In excessive force cases, our rule is that there is an even greater emphasis on the requirement of particularity, where officers act under pressure and must make very quick judgments. See Wilson, 526 U.S. at 615, 119 S.Ct. 1692 (“[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.”); Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir.2000) (observing that “generally no bright line exists for identifying when force is excessive”).[43] The test for excessive force “does not always give a clear answer as to whether a particular application of force will be deemed excessive by the courts. This is the nature of a test which must accommodate limitless factual circumstances.” Saucier, 533 U.S. at 205, 121 S.Ct. 2151. “[T]he Supreme Court has cautioned that in many cases the generalized holdings of [Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985),] and [Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989),] will not provide sufficient notice to police officers” as to what constitutes excessive force. Whitfield v. Meléndez-Rivera, 431 F.3d 1, 8 (1st Cir.2005). As reasoned above, Jennings has not provided any such particularized prior case.
There is an exception to the need for particularized prior law where the police conduct is so excessive and lies so obviously at the core of what the Fourth Amendment prohibits that the unlawfulness of the conduct would have been readily apparent to an officer. See United States v. Lanier, *146 520 U.S. 259, 270-71, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997); Brady, 187 F.3d at 116. The majority tries to fit within this exception. It reasons that it was so obvious that the use of force was excessive that Jones was clearly on notice for purposes of the second prong. The majority attempts to justify its obviousness conclusion by saying there is a clear and obvious dividing line between use of force and increased use of force. It cites no cases for that point, and the case law, described earlier, goes the other way. The majority’s conclusion is not supported by the facts or by the case law.
As the district court pointed out, there are no cases holding that the use of the ankle turn control technique, which itself involves the use of varying degrees of force, is unconstitutional. Jennings, 2005 WL 2043945, at *9. Indeed, the use of pain, even when an individual complains of pain, is an established technique to bring an arrestee under control and to prevent possible injury to an officer. Case law has clearly established that the use of similar application-of-pressure techniques, even those involving increasing amounts of pain, does not amount to excessive force. There certainly are cases in which an officer’s use of force is so obviously excessive that the officer is on clear notice; this is not one of them.
C. Third Prong: Whether an Objectively Reasonable Officer Could Have Concluded that Jones’ Actions Were Lawful
The third prong of our qualified immunity test asks “whether a reasonable officer could have concluded that his actions did not violate [the] plaintiff[’s] constitutional rights.” Tremblay v. McClellan, 350 F.3d 195, 199 (1st Cir.2003). This inquiry acknowledges that “law enforcement officials will in some cases reasonably but mistakenly conclude that [their conduct] is ... lawful.” Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In Saucier, the Supreme Court explained how the third prong applies in excessive force cases:
It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer’s mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.
533 U.S. at 205,121 S.Ct. 2151.
Under the third prong, an officer who makes “a reasonable judgment call” is entitled to qualified immunity. Buchanan, 469 F.3d at 170. “The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.” Graham, 490 U.S. at 396-97, 109 S.Ct. 1865. On these facts, an objectively reasonable officer could have believed that Jones’ use of force — and its degree — was lawful.[44]
*147 There are a number of reasons for this. First, this was an instance of quick judgment by an officer in a chaotic situation. The district court stated that the entire series of these events took place in a chaotic scene over the course of about one minute. The key events, from when Officer Hill got up from the floor to when Jennings shouted in pain, took place within “several seconds.” Jennings has represented the time in question to last anywhere from twelve to eighteen seconds. In this short time frame, a reasonable officer easily could have made mistakes as to Jennings’ degree of resistance, the degree of risk Jennings posed to the officers, and the appropriate level of force to employ.
Concern over the safety of the officers and others was entirely reasonable. Jones testified he tried to secure Jennings’ ankle both for his own safety, to prevent Jennings from kicking him while he was kneeling next to Jennings, and to lessen Jennings’ resistance to arrest. He was also concerned that Jennings might have a weapon because he could not see Jennings’ hands. Jennings himself acknowledged that at least one of his hands was not visible for a time. There is no doubt Jennings was resisting the officers earlier in the encounter. That was shown in the videotape.
Even if Jennings had just stopped kicking and flailing, the undisputed evidence demonstrates that (1) Jennings was not totally secured at the time his ankle was broken, (2) Jennings had posed a threat to the safety of the officers and others just seconds before, (3) the officers were having a difficult time getting the flex cuffs on Jennings, and (4) Jones’ overall use of force was, in the opinion of the expert, reasonable under the circumstances.[45] Lt. Delaney, the only expert witness on use of force, testified that until Jennings was “totally cuffed up and secured,”[46] it was *148 appropriate for Jones to continue using the same compliance technique as he had, and alternative compliance techniques were not acceptable. Not even Jennings asserts that he was secured in handcuffs at the time his ankle was broken. Nor did any of his witnesses. Jennings asserted only that he had stopped moving and was not resisting arrest. And Officer Hill was clear that Jennings was not in cuffs when Hill stood up. Indeed, Hill got out of the way because other officers were having trouble cuffing Jennings.
The majority says it is irrelevant that Jennings was not handcuffed; the only important consideration is that Jennings had stopped struggling. Not so. Jennings had just been subdued by Hill; Hill then got up and Jennings could, until he was cuffed, have started up again at any time. An officer could reasonably view this as a time of great risk, and even greater risk than when Hill had subdued Jennings. The majority claims that expert testimony supports its view that any increase in force once Jones stopped struggling was unreasonable. The expert said just the opposite. Delaney testified that the degree of force was a judgment call, and that resistance was one factor and risk was another. Even if Jones were wrong about the degree of risk, his judgment was not unreasonable.
Jennings’ argument is that regardless of whether he was cuffed, and even if the ankle turn control technique is acceptable, Jones applied the technique with too much force. But that is precisely in the area of judgment calls which are protected by qualified immunity. The district court directly addressed the degree of force or tension which Jones applied to the ankle, concluding that
[t]he ambiguity of the factual situation confronting Jones; the “split second” nature of the decision that he was required to make; the existence of established departmental policy permitting use of the ankle control technique under such circumstances; and the absence of any case law prohibiting its use, virtually compel the conclusion that it was objectively reasonable for Jones to believe that he acted lawfully.
Jennings, 2005 WL 2043945, at *11.
Under our case law, the district court committed no error in finding qualified immunity on the basis that this was a protected judgment call. See Buchanan, 469 F.3d at 170; Cox v. Rainey, 391 F.3d 25, 31-32 (1st Cir.2004); Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 7 (1st Cir.1997).
III. Motion for a New Trial
Even if the majority were correct to reverse the district court’s grant of JMOL, the appropriate remedy would be to remand to the district court for reconsideration of the defendant’s motion for a new trial.
The majority sua sponte holds that a defendant who files both a JMOL motion on which he prevails on immunity grounds and a new trial motion that is found to be moot will be deemed to have abandoned his new trial motion if he does not move the trial court to reconsider its mootness ruling on the new trial motion, and he then does not as appellee raise the new trial motion on appellant’s appeal from the grant of JMOL, even though appellant never raises the issue on appeal.[47] The *149 majority says its new rule depends upon a combination of both of these circumstances. Jennings did not raise the issue or seek this relief, and the issue has never been briefed or argued to us.
This sua sponte “deemed abandoned” holding, I believe, is wrong on the merits, is contrary to controlling circuit and Supreme Court precedent, misapplies both the judicially crafted doctrine of abandonment and the precedent on which the majority purportedly rests, and is inconsistent with the plain language of Federal Rule of Civil Procedure 50.[48] Under the Supreme Court’s decision in Neely v. Martin K. Eby Construction Co., 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967), and our circuit precedent, we must remand to the district court so that it can decide the substantial new trial question.
The majority’s analysis is flawed for a number of different reasons. Under controlling First Circuit law, there is no abandonment here at either the trial or appellate level by Jones. The deemed abandonment doctrine as articulated in the cases on which the majority relies has no application where a defendant does not abandon an issue, but does obtain a ruling in the trial court on a new trial motion, as here. That doctrine, even on its own terms (which involve a failure by a trial court to take action on a new trial motion), has been rejected by a number of circuits and has never been accepted by this court. The defendant has not abandoned his new trial motion by not mentioning it in his brief as appellee, particularly where appellant has not mentioned the issue. Further, Federal Rule of Civil Procedure 50 by its plain language, which does not create such an abandonment doctrine, establishes that the majority’s position is in error.
The majority also errs in that its ruling is flatly contrary to an important constraint on appellate power. While this court does have a constrained authority, when it reverses a grant of JMOL, to decide whether to remand a new trial motion to the district court, it must exercise that authority in such a way as not to usurp the trial court’s role. Here, it is evident that the trial court is likely to grant the new trial motion, not deny it, and the appellate court cannot exercise its appellate power to deny the motion by deeming it abandoned. On the merits of the motion, apart from the deemed abandonment, no appellate court could find that a grant of a new trial was an abuse of discretion.
An appeals court may in certain circumstances consider the merits of a new trial motion. Rule 50 provides for such a situation; but, as I discuss below, Rule 50 does not authorize such review here. Much more importantly, the Supreme Court has held that the authority of an appellate court to rule on a new trial motion is constrained, and that where the new trial motion has merit, the court of appeals may not itself deny the motion. Neely, 386 U.S. at 325, 87 S.Ct. 1072. That is also our circuit law as set forth in Systemized of New England, Inc. v. SCM, Inc., 732 F.2d 1030, 1036-37 (1st Cir.1984).
Furthermore, the majority is incorrect that the only circuit court decision to address the situation before us has held that a remand was error. In Rhone Poulenc Rorer Pharmaceuticals Inc. v. Newman Glass Works, 112 F.3d 695 (3d Cir.1997), the Third Circuit was faced with this situation, and it held that a remand for consid *150 eration of the merits of the new trial motion was the only appropriate course. Id. at 698-99. Moreover, as I discuss in detail below, the approach taken by the Fifth Circuit in Arenson v. Southern University Law Center, 43 F.3d 194 (5th Cir.1995), on which the dissent so heavily relies, has been rejected by a majority of circuits and has never been adopted by this circuit. Indeed, such an approach is entirely inconsistent with our decision in Systemized.[49] See 732 F.2d at 1036-37.
I explain my disagreement with the majority in more detail below.
A. There Was No Abandonment
The majority confuses the judicially crafted abandonment rule, applies it where it is inapplicable, and radically extends the rule in a way that conflicts with the Federal Rules of Civil Procedure.
It is black letter law that an issue can be abandoned in the trial court. See, e.g., Simon v. Navon, 71 F.3d 9, 13 (1st Cir.1995) (“The district court rejected the [defendants’] post-trial motion for judgment as a matter of law because they failed to make that request at the close of all evidence, thus forfeiting the right to such a determination. Once abandoned, a claim ... may not be revived on appeal except upon a showing of plain error resulting in a manifest miscarriage of justice.” (citations omitted)); accord Watkins v. J & S Oil Co., 164 F.3d 55, 58 (1st Cir.1998); Martinez Moll v. Levitt & Sons of P.R., Inc., 583 F.2d 565, 570 (1st Cir.1978).
An issue can also be abandoned on appeal. See, e.g., Martinez v. Colon, 54 F.3d 980, 990 (1st Cir.1995); accord Ryan v. Royal Ins. Co. of Am., 916 F.2d 731, 734 (1st Cir.1990); United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990). The majority deems the new trial issue to have been abandoned by Jones at both levels. I will discuss these separately.
1. Abandonment in the Trial Court
There clearly was no abandonment in the trial court. Jones pressed his motion for a new trial and received a ruling on it. That ruling (of mootness) was incorrect. The incorrectness of the ruling cannot mean the party abandoned the motion.
The majority’s deemed abandonment rule rests on the mistaken premise that this situation is the equivalent of Jones’ not pressing the new trial issue below and so not obtaining a ruling. A minority of circuits have viewed the failure of a party to press a new trial motion in the trial court to obtain a ruling and then subsequent failure to discuss the issue on appeal as a deemed abandonment; the majority of circuits have not, as discussed below.
This circuit has never adopted such a deemed abandonment rule, and the majority’s new rule is contrary to circuit precedent. Indeed, we have not deemed a motion for new trial to be abandoned by a party when a trial judge erroneously ruled that the grant of a judgment notwithstanding the verdict mooted the need for a ruling on a new trial motion. See Systemized, 732 F.2d at 1036-37. Rather, this court held that because of the possible merit of the new trial motion, it was required to remand the new trial motion to the trial court for its determination. See id.
*151 Systemized established that the correct framing of the question in such circumstances is not one of abandonment, but of whether there was possible merit to a new trial motion, and if so, then a remand to the trial court was required. See id. at 1037 (“Our only course is to remand to the district court for a determination of whether to grant a new trial or order a remitti-tur on plaintiffs verdict.”). We followed the same course in United States v. Moran, 312 F.3d 480 (1st Cir.2002), in which we reversed a judgment of acquittal, reinstated the jury verdict, and remanded to the district court to consider an alternative motion for a new trial that had not yet been ruled upon. See id. at 494.
When we have reversed entry by the trial court of a directed verdict or JNOV, we routinely have remanded to the district court to decide the new trial issue. Indeed, we have sometimes decided that inherent in the trial court’s reasons for granting such a directed verdict or JNOV, despite reversal of the verdict on appeal, are reasons why a new trial must be granted, and we have remanded and ordered a new trial.[50] See, e.g., Jodoin v. Toyota Motor Corp., 284 F.3d 272, 280-81 (1st Cir.2002); Decato v. Travelers Ins. Co., 379 F.2d 796, 799 (1st Cir.1967); Gebhard v. Royce Aluminum Corp., 296 F.2d 17, 19 (1st Cir.1961). Here, the trial court in its reasoning signaled, but did not hold, that it would grant a new trial.
Further, this circuit has no rule requiring parties to move for reconsideration of erroneous rulings on motions or be deemed to have abandoned the motion. Nor do we require a party for whom judgment has entered to file a post-judgment motion to reconsider the court’s decision on a different motion not embodied in the judgment. For instance, when a district court fails to properly follow remittitur rules, we do not require that the aggrieved party move for reconsideration before the district court or be deemed to have abandoned the issue. Rather, we remand to the district court to properly apply the rules by giving the party a choice between a reduced award and a new trial. See, e.g., Bisbal-Ramos v. City of Mayagüez, 467 F.3d 16, 26-27 (1st Cir.2006).[51] The majority cannot evade the law of this circuit by looking to law from other circuits.
Even were law from other circuits germane, the deemed abandonment discussion only comes up when the party has failed to press the motion in the trial court. That did not happen here, so there is no basis to even consider applying such a rule. The majority attempts to avoid this obvious conclusion by arguing, in effect, that be *152 cause the trial court erred in saying the new trial motion was moot, that is the equivalent of the situation in which the trial court simply fails to address an issue at all. That is self-evidently not so.
Indeed, the deemed abandonment cases from the Fifth, Seventh, and Eleventh Circuits cited by the majority (and rejected by a greater number of other circuits) defeat, not support, application of the majority’s deemed abandonment rule on the facts of this case. In Oberman v. Dun & Bradstreet, Inc., 507 F.2d 349 (7th Cir.1974), the Seventh Circuit held that alternative motions for new trial not pressed on the district court after grant of JMOL are abandoned. Id. at 353. Moreover, the Seventh Circuit has not always applied even this rule. In a later case, Isaksen v. Vt. Castings, Inc., 825 F.2d 1158 (7th Cir.1987), the court, after reversing a grant of JMOL, remanded an undecided new trial motion to the district court for consideration.[52] Id. at 1165.
The Fifth Circuit, citing the Oberman decision, in Johnstone v. American Oil Co., 7 F.3d 1217, 1224 (5th Cir.1993), mandate recalled, 17 F.3d 728 (5th Cir.1994), and Arenson v. Southern University Law Center, 43 F.3d 194, 196 (5th Cir.1995), has held that “when the defendants failed to seek a ruling from the district court on their motion for new trial and failed to mention the new trial motion on appeal, they abandoned the motion,” id. at 196. In discussing its rule, the Fifth Circuit suggested that its concern lay primarily with the defendant’s failure to alert the trial court to its procedural error. Id. Here there was no procedural error of overlooking the motion and not ruling on it; rather the court committed substantive error in holding the motion moot.
The Eleventh Circuit in Edwards v. Board of Regents of the University of Georgia, 2 F.3d 382 (11th Cir.1993), appeared to adopt the deemed abandonment rule when it held that a party had abandoned a new trial motion on which the district court had not ruled and which the appellee had not raised on appeal. Id. at 384 n. 6. More recently, the Eleventh Circuit has stressed that its rule has two parts and said it would not apply the rule unless the movant had abandoned the new trial motion by failing to obtain a ruling on it in the trial court and had waived the motion by failing to raise it on appeal. See Christopher v. Florida, 449 F.3d 1360, 1365 n. 3 (11th Cir.2006). In Christopher, the movant had not obtained a ruling in the trial court but did request that the appellate court grant it a new trial on appeal. The Christopher court, far from considering the motion abandoned, accepted that on the facts of the case the trial judge would have conditionally granted the motion, reviewed that grant of a new trial for abuse of discretion considering the arguments presented by both sides on appeal, and agreed that a new trial was proper. Id. at 1365 & n. 3.
In all of those cases, the courts of appeals noted that the district court had failed to rule at all on the alternative motion for a new trial. Arenson, 43 F.3d *153 at 195; Johnstone, 7 F.3d at 1224; Edwards, 2 F.3d at 383 n. 4; Oberman, 507 F.2d at 353. Because the movants had not brought this oversight to the attention of the district courts, the motions were deemed abandoned in the district court. Arenson, 43 F.3d at 196; Johnstone, 7 F.3d at 1224; Edwards, 2 F.3d at 384 n. 6; Oberman, 507 F.2d at 353. By contrast, the district court did rule on Jones’ motion for a new trial; it ruled that the motion was moot. There was no failure by the trial court to rule on a pending motion at ah.
But even this deemed abandonment rule has been rejected as unsound in at least five of our sister circuits, whose law is more consistent with the law of this circuit. The Third Circuit has explicitly rejected the deemed abandonment rule. In Rhone Poulenc, the Third Circuit reversed the district court’s grant of JMOL and then considered how to treat a motion for a new trial on which no conditional ruling had been granted and which had been dismissed as moot. Id. at 698-99. The court concluded that “[b]ased on the grounds raised in the new trial motion and [the] lack of any trial record or argument before [it] on the issue, ... prudence militate[d] in favor of a remand.” Id. at 699.
The Ninth Circuit also has explicitly rejected the rule that failure to secure a conditional ruling on an alternative new trial motion may be deemed abandonment of that motion in the trial court. In Freund v. Nycomed Amersham, 347 F.3d 752 (9th Cir.2003),[53] the Ninth Circuit stated:
When a district court fails to enter a Rule 50(c) conditional order on a new trial motion, “we have discretion to either remand to the district court to let it decide the new trial motion or to decide the new trial motion ourselves.” We ... reject [plaintiffj’s contention that [defendant] waived its right to a new trial by not drawing the district court’s attention to its failure to make a conditional ruling as required by Rule 50(c).
Id. at 764 (quoting Acosta v. City & County of S.F., 83 F.3d 1143, 1149 (9th Cir.1996)). The court “decline[d]” to follow a rule that “a litigant who fails to secure a Rule 50(c) conditional ruling in the district court loses the right to a new trial if the judgment as a matter of law is reversed.” Id. at 765. It clearly rejected any argument that a defendant waives his new trial motion if he does “not draw the district court’s attention to its failure to make a conditional ruling as required by Rule 50(c).” Id. The court further noted that in ruling the new trial motion moot the district court had not failed to rule, and held that there was no waiver. Id.
The Second and Fourth Circuits have impliedly rejected the majority’s rule. The majority cites, in supposed support of its new rule, Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564 (2d Cir.1989). In Grant, the Second Circuit was concerned with the different problem of the remedial powers of the federal appellate courts. It held that courts of appeal may decide themselves whether the circumstances of a particular case warrant their deciding the new trial issue rather than remanding to the district court for such a determination. It stated: “[I]f the court of appeals may reverse the grant of a new trial and order entry of judgment on the verdict, and it seems settled that we may do so, it would seem absurd to hold that the remedy is circumscribed by the failure of the district *154 judge to follow the command of rule 50(c) to rule on the motion for a new trial.” Id. at 1571 (second emphasis added) (quoting Mays v. Pioneer Lumber Corp., 502 F.2d 106, 110 (4th Cir.1974)) (internal quotation marks omitted). The court then determined for itself that in that case there was no basis for a new trial. Id. (“Under the circumstances of this case, including the fact that HSCC fails to raise any reason for a new trial on appeal, we see no reason to deprive Grant of the benefit of the jury’s verdict.” (citation omitted) (citing Oberman, 507 F.2d at 353)).
Similarly, in Mays v. Pioneer Lumber Corp., 502 F.2d 106, the Fourth Circuit necessarily rejected the majority’s conception of abandonment in the trial court when it determined that an appellate court may itself consider on the merits whether a new trial is appropriate. See id. at 110. The court then determined, based on the facts of the case, including the fact that the case already had been tried twice, that a new trial was not warranted and so there was no point in a remand. Id. The court never stated, nor even suggested, that the new trial motion had been abandoned in the trial court, saying only that it thought that “no useful purpose would be served by remanding to the district judge to entertain and decide a renewed motion for a new trial.” Id.
At most, Grant and Mays adopt the sensible rule, which is utterly contrary to the majority’s position, that an appellate court may decide on the merits that there is no point in remanding for consideration of a new trial motion when it is clear that a new trial cannot be granted. If there had been abandonment of the new trial motion, the Second and Fourth Circuits would not have considered the merits of the remedies of remand or new trial at all; yet the appellate courts did consider on the merits whether they should remand.
Finally, the Eighth Circuit, in Nodak Oil Co. v. Mobil Oil Corp., 526 F.2d 798 (8th Cir.1975), when confronted with a new trial motion on which the district court had failed to rule, did not hold the motion abandoned. Id. at 798-99. Instead, the court retained jurisdiction over the appeal and remanded the case to the district court for the purpose of ruling on the new trial motion, instructing the district court to certify its ruling to the court. Id. at 799. The Nodak Oil court did not even consider the possibility that the new trial motion had been abandoned by the movant’s failure to obtain a conditional ruling.[54]
2. Abandonment on Appeal
To the extent the majority opinion is based on its view that Jones independently abandoned the issue by not raising it as appellee in these circumstances, its rule is wrong. Again, the majority’s new deemed abandonment rule is a radical reworking of the otherwise sound principle that an argument may be abandoned on appeal. That reworking is prohibited by the law.
The cases on which the majority relies all involve the purported abandonment of an issue at the trial court level followed by a failure to mention the issue on appeal. None of those cases supports the majority’s new rule that because Jones, as appel-lee, did not mention the issue in his brief *155 in response to Jennings’s appeal he has nonetheless abandoned the issue.
Normally, on appeal, the abandonment rule is applied to an appellant who does not raise an issue in his initial brief on appeal. See generally 16A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3974.1, at 501 & n. 12 (3d ed.1999); see also Frazier v. Bailey, 957 F.2d 920, 932 n. 4 (1st Cir.1992) (using language of waiver); accord Piazza v. Aponte Roque, 909 F.2d 35, 37 (1st Cir.1990). Even this abandonment rule for appellants is subject to exception. See United States v. Tracy, 989 F.2d 1279 (1st Cir.1993).
Here, Jones is not the appellant, but the appellee. It is black letter law that a party may appeal only judgments adverse to him. In re Shkolnikov, 470 F.3d 22, 24 (1st Cir.2006); see also Lindheimer v. Ill. Bell Tel. Co., 292 U.S. 151, 176, 54 S.Ct. 658, 78 L.Ed. 1182 (1934); W.W. Windle Co. v. Comm’r, 550 F.2d 43, 45 (1st Cir.1977). Here, the district court issued no judgment against Jones. Like the appellant in Shkolnikov, Jones prevailed below. “It is an abecedarian rule that a party cannot prosecute an appeal from a judgment in its favor.” Shkolnikov, 470 F.3d at 24. Adoption of a rule requiring Jones to appeal or cross-appeal from the district court’s mootness ruling on his new trial motion, which was not a judgment against Jones, is flatly barred by Shkolnikov,[55] Circuit precedent thus dictates that Jones can be only an appellee in this case. Since Jones was not required to appeal or cross-appeal the mootness ruling, he cannot have abandoned it on appeal.
Further, this circuit does not require appellees to brief issues or have them deemed abandoned when those issues are not raised by the appellant. Rather, it is appellant who waives those issues not adequately raised in his brief. Playboy Enters., Inc. v. Pub. Serv. Comm’n of P.R., 906 F.2d 25, 40 (1st Cir.1990) (“An appellant waives any issue which it does not adequately raise in its initial brief, because in ‘preparing briefs and arguments, an ap-pellee is entitled to rely on the content of an appellant’s brief for the scope of the issues appealed.’” (quoting Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir.1983))); cf. Zannino, 895 F.2d at 17 (“[Ijssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.”). Jennings did not raise this issue, and it cannot be that Jones was required to raise the issue himself or be deemed to have abandoned it.
The majority points out that Jones could have raised the issue of his new trial motion in his brief, even if Jennings did not. That is not the question. Perhaps Jones’ brief, instead of simply asking for affir-mance of the qualified immunity ruling in his favor, might have added another line saying that if the court of appeals reversed judgment in favor of Jones on qualified immunity, it should remand the issue of a new trial to the district court for a ruling on the merits of the new trial motion. The majority holds, contrary to law, that the lack of such a statement, which is not required, constitutes abandonment on appeal. It does not.
*156 The majority’s response is that Rule 50 required Jones to somehow raise the issue or abandon it. The flaws in that reasoning are described next.
B. Federal Rule of Civil Procedure 50
The majority’s deemed abandonment rule not only is not supported, but also is refuted, by the plain language of Federal Rule of Civil Procedure 50, which governs motions for JMOL and alternative motions for a new trial. The portion of Rule 50 that is pertinent is Rule 50(c)(1), which provides:
If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
Rule 50(c)(1) has two pertinent parts. It imposes an obligation on a trial judge to issue a conditional ruling on an alternative motion for new trial. It does not, however, authorize the majority’s deemed abandonment rule, which penalizes a party when a district court erroneously holds the new trial motion is moot. Rule 50(c)(1) contains no requirement that a party who prevails on a motion for JMOL request that the district court reconsider its ruling that the alternative new trial motion is moot, nor that such a party raise the motion on appeal, in order to preserve the motion for a new trial.
Rule 50(c)(1) also provides for the situations in which the court issues a conditional order granting a new trial and when it issues a conditional order denying a new trial. It does not set rules for when the district court does neither. Rule 50(c)(1) says that ordinarily when a conditional new trial motion has been granted, the court of appeals should remand for a new trial. If, however, the conditional order denies the new trial motion, the appellee may assert error to the appellate court in that denial. In both cases, the appellate court will have the benefit of the trial court’s reasoning on the new trial issue. Here, there is no such denial and no such reasoning to review.
The majority argues that the situation before us is the functional equivalent of that contemplated by Rule 50(c)(1), and that the rule therefore supports its position. It argues that Jones, like the Rule 50(c)(1) appellee, having failed to obtain a favorable ruling on the new trial motion, could have protected himself by arguing to this court that in the event the appellate court overturned the district court’s grant of JMOL, the appellate court should grant a new trial. The majority is incorrect to assert that Jones is in the same position as the Rule 50(c)(1) appellee, whose new trial motion has been denied. At the most basic level, an appellee such as Jones has made a motion for a new trial in the district court, the merits of which remain to be considered if the grant of JMOL is reversed. The Rule 50(c)(1) appellee, by contrast, has had his new trial motion denied. It is particularly inappropriate for the majority to attempt to analogize since the trial court’s reasoning strongly implies *157 that it would grant, not deny, a motion for a new trial.
Moreover, the text of Rule 50(c)(1) is incompatible with any such functional analysis. The plain language of Rule 50(c)(1) itself makes clear that a party whose new trial motion is deemed moot is not required to raise his new trial motion on appeal. The majority’s attempt to impose any such requirement on appellees such as Jones simply is not permissible. See Pavelic & LeFlore v. Marvel Entm’t Group, 493 U.S. 120, 123, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).
By contrast to Rule 50(c), Rule 50(d) states that “[i]f the motion for JMOL is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling the party to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for judgment” (emphases added). The Rule gives permission to the party who obtained a denial of another party’s motion for JMOL to assert on appeal grounds for why a new trial should be granted in the event the appellate court finds that the trial court erred in denying the JMOL. The permission Rule 50(d) gives does not apply where, as here, the appellate court finds the trial court erred in granting the motion for JMOL.
If Rule 50 were meant to require anything, on pain of abandonment, of parties whose new trial motions are deemed moot because they have prevailed on a motion for judgment as a matter of law, it would have said so. Cf. Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 47 n. 22, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (“[H]ad Congress intended a state-law definition of domicile, it would have said so. Where Congress did intend that [the Act’s] terms be defined by reference to other than federal law, it stated this explicitly.”). This court is bound to apply the Rules as they are written; we have no freedom to stretch the text of Rule 50 to create requirements that the drafters specifically declined to impose. Pavelic & LeFlore, 493 U.S. at 123, 110 S.Ct. 456 (“We give the Federal Rules of Civil Procedure their plain meaning.”); cf. Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 126 S.Ct. 980, 985-87, 163 L.Ed.2d 974 (2006) (reversing a court of appeals’ grant of a new trial to a party who had not moved for a new trial in the district court, and holding that “a party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in the district court” in compliance with Rule 50).
C. Conflict with Supreme Court Precedent
The Supreme Court’s decision in Neely does not support the majority; rather, it establishes that the majority has exceeded its appellate authority. In Neely, the question was whether the court of appeals, after reversing denial of a defendant’s Rule 50(b) motion for JNOV, where plaintiffs evidence was insufficient to get to the jury, may itself order dismissal or direct entry of judgment for defendant when the district court had denied the defendant’s motion for a new trial as well. 386 U.S. at 319-20, 87 S.Ct. 1072. The Court held that Rule 50(d) was applicable because the trial court had denied the JNOV. Id. at 323, 87 S.Ct. 1072. It also noted that Rule 50(c)(1) operated in the manner described earlier in this opinion. Id. at 322-23, 87 S.Ct. 1072. For these reasons, Neely offers no help to the majority.[56]
*158 Neely stresses that the remedial power of the courts of appeals to address the new trial issue is limited, and the court of appeals may not usurp the role of the trial court. The Supreme Court held that an appellate court may not order entry of judgment “where the record reveals a new trial issue which has not been resolved.” Id. at 325, 87 S.Ct. 1072. Neely emphasizes the need usually to defer to the trial judge’s perspective on new trial matters. See id.
The Supreme Court more recently characterized Neely as “reiterating] the value of the district court’s input, [and] cautioning the courts of appeals to be ‘ “constantly alert” to “the trial judge’s first-hand knowledge of witnesses, testimony, and issues.” ’ ” Unitherm Food Sys., Inc., 126 S.Ct. at 986 n. 3 (quoting Weisgram v. Marley Co., 528 U.S. 440, 443, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000) (quoting Neely, 386 U.S. at 325, 87 S.Ct. 1072)). The trial judge’s first-hand knowledge is directly at stake in Jones’ new trial motion, and the majority should have deferred to the trial court here.[57] See Iacurci, 387 U.S. at 88, 87 S.Ct. 1423 (holding that where the meaning of the jury’s verdict was not clear in light of the trial court’s jury instructions, “the Court of Appeals erred in directing entry of judgment for respondent; the case should have been remanded to the Trial Judge, who was in the best position to pass upon the question of a new trial in light of the evidence, his charge to the jury, and the jury’s verdict”).
This panel is not at liberty to adopt a rule that is at odds with our own precedent, with Rule 50, and with Neely. Regrettably, in my view the majority has done precisely that.
IV.
For the reasons stated above, I respectfully dissent as to both of the majority’s holdings.

. Those reasons did not include the fact that the trial court would itself have reached a different conclusion from the jury on the excessive force issue. The district court, based on its own assessments of the credibility of the witnesses and the weight of the evidence, expressed its view that Jones had not used excessive force. Jennings, 2005 WL 2043945, at *6. Nonetheless, the district court expressly stated this was not the basis for its immunity holding, acknowledging that a motion for JMOL does not permit a court to make its own assessment regarding the weight of the evidence. Id. at *7. The majority, however, states that “the district court's qualified immunity analysis incorporated its skepticism about the jury's fact-finding on the critical issue of whether Jones increased his use of force.” The majority does a disservice to the district court by suggesting it did something it expressly said it did not do.

. Where we are reviewing a denial of qualified immunity by a judge which is consistent with a jury verdict, we have said that “the evidence must be construed in the light most hospitable to the party that prevailed at trial.” Iacobucci v. Boulter, 193 F.3d 14, 23 (1st Cir.1999); see also Borges Colón v. Román-Abreu, 438 F.3d 1, 18 (1st Cir.2006); Whitfield v. Meléndez-Rivera, 431 F.3d 1, 6 (1st Cir.2005). We have held that there is no prohibition on a judge’s reasonably accepting the jury's findings as his or her own for purposes of qualified immunity. See Iacobucci, 193 F.3d at 23. We have never explicitly discussed the reverse situation, where the judge awards immunity in the face of a jury finding that there was a constitutional violation. Jones has not made an argument as to this point, so I bypass it.

. The Supreme Court noted in Iacurci v. Lummus Co., 387 U.S. 86, 87 S.Ct 1423, 18 L.Ed.2d 581 (1967), reversing a court of appeals for entering JMOL, "We do not share the Court of Appeals’ confidence as to the meaning [of the jury verdict] in light of the trial court's instructions....” Id. at 87, 87 S.Ct. 1423. Nothing in the jury instructions here required that the jury necessarily base its verdict on the majority's proposed factual findings. The district court quite properly did not instruct that the theory of plaintiff's case required these two findings. The jury was instructed that in determining whether Jones used excessive force it could consider whether Jennings posed a threat to the safety of others; whether the threat was immediate and serious; whether Jennings was disrupting the search of the smoke shop; whether Jennings was actively resisting arrest; the degree of force used; the seriousness of the offense for which Jennings was being arrested; and whether the degree of force was proportional to what was appropriate under the circumstances. Iacurci cannot be written off as idiosyncratic, nor is it easily distinguishable.
Further, the facts themselves provide alternatives, and it is far from obvious on what subsidiary facts the verdict rested. The jury could have found that the seriousness of the injury, a broken ankle, was not justified by the charges Jennings was arrested on — -disorderly conduct. This theory was argued by plaintiff's counsel at closing, and was consistent with the jury instructions. Or the jury could have concluded that the application of force sufficient to break Jennings' ankle was itself excessive, whether or not Jennings had continued to resist, and whether or not Jones increased the amount of force. The jury could have concluded that it was unreasonable for Jones to maintain the same force once Jennings said something about his ankle. Or it could have concluded that Jones maintained the same level of force when, in its view, that level was excessive to begin with. It may also be, as the district court noted, that the jury concluded that Jones "continued to twist Jennings’ ankle after Jennings had stopped resisting.” Jennings, 2005 WL 2043945, at *6. That is not a conclusion that *142 Jones "increased” the pressure, and again shows that the jury did not necessarily find the facts as the majority assumes.
There is another reason not to conclude that the verdict against Jones necessarily entailed the majority’s two factual findings. At the start of trial, there were seven individual defendants. There were also three plaintiffs, including Jennings’ mother. These plaintiffs asserted twenty-one different claims. On the six claims that went to the jury, the jury ruled against plaintiffs on all claims except for the excessive force claim against Jones. Jurors sometimes reach compromise verdicts.

. In my view, the majority’s focus on its two facts as necessary findings does not represent "the jury's discernible resolution of factual issues,” Iacobucci, 193 F.3d at 23, but for these purposes I will assume Iacobucci is satisfied.

. The district court held, on the first prong, that the jury verdict that there had been excessive force was not supported by any evidence that no objectively reasonable officer would have applied the ankle turn control technique as Jones did. Jennings, 2005 WL 2043945, at *7. It is not necessary to discuss this finding.

. Other circuits have taken a similar approach to particularity in the context of Fourth Amendment reasonableness inquiries, especially in excessive force cases. See Walker v. City of Orem, 451 F.3d 1139, 1151 (10th Cir.2006) (noting in a Fourth Amendment unreasonable detention case that "allegations of constitutional violations that require courts to balance competing interests may make it more difficult to find the law ‘clearly established' when assessing claims of qualified immunity” (quoting Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir.1992)) (internal quotation marks omitted)); Williams v. Kaufman County, 352 F.3d 994, 1012 (5th Cir.2003) (holding that prolonged detention was unlawful, but affirming qualified immunity because applicable Supreme Court law, which "allow[ed] a seizure without probable cause when the proper balance [was] struck between law enforcement and personal security interests," failed to put officer on notice); Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir.2000) ("In the context of ... excessive force claims, we have noted that generally no bright line exists ...; we have therefore concluded that unless a controlling and materially similar case declares the official’s conduct unconstitutional, a defendant is usually entitled to qualified immunity.”).

. As one commentator has noted in light of the chaotic circumstances surrounding most excessive force claims, while "there may be cases ... where the law was so clearly settled that the finding of a constitutional violation would mean that the defendant loses on qualified immunity as well[, such cases] will be relatively rare in the Fourth Amendment ... excessive force setting because of the very fact-specific nature of these issues.” 2 S. Nahmod, Civil Rights and Civil Liberties Litigation: The Law of Section 1983 § 8:19.50, at 103 (4th ed.2006).

. The district court reached its conclusion based on the following factual findings, which have ample support in the record.
Jones did not know why Jennings was being arrested or whether he was armed. Nor could Jones have known, with any certainty, why Jennings failed to heed orders to show his hands. Moreover, even if Jennings had stopped actively resisting, Jones had no way of knowing whether Jennings would resume kicking or resisting if Jones released his ankle hold.
*147 In addition, ... Jones and other troopers at the Academy were taught that the ankle control technique is appropriate to subdue an arrestee who is actively resisting; to protect against the possibility that an arres-tee who previously engaged in assaultive behavior might resume that behavior and/or to induce compliance by an arrestee who is passively resisting. Furthermore, Delaney, the only expert witness who testified, indicated that Jones acted properly and in accordance with departmental policy regarding use of the ankle turn control technique.
Jennings, 2005 WL 2043945, at *11. The district court's conclusion rests on subsidiary factual findings, which are not clearly erroneous.

. The majority argues that Lt. Delaney's assessment of the reasonableness of Jones' actions did not keep "the relevant factual circumstances in mind” because the factors listed by Delaney to support his view "all occurred prior to the time that Jennings ceased to resist.” The majority's argument is misguided. Delaney listed a number of factors he considered relevant to his opinion, including Jennings' noncompliance and assaultive behavior, but these were not the only circumstances he had in mind. The trial transcript makes clear that Delaney's opinion was based on the same videotape the majority says demonstrates that Officer Hill walked away after pulling Jennings' left arm out from under his body.
Further, the majority fails in its attempt to distinguish "use of force” from "increase in force” as a matter of evidence. The transcript is clear that the expert was asked about the reasonableness of Jones’ use of force overall, not about the reasonableness of the use of the ankle turn control technique without an increase in force. Even if the central issue in the case is the increase in force on Jennings’ ankle, Delaney's testimony directly addresses the reasonableness of Jones' overall conduct.

. Delaney testified specifically about the period when officers were trying to get Jennings "cuffed up and secured.” He explained that flex cuffs, which are made of plastic, are more difficult to apply than metal cuffs, and that it is very hard to get them on someone who does not want to be handcuffed.

. The question here is not whether Jones could have asked this court to find that a new trial was warranted based on the district court's reasoning, and to remand to the district court for a new trial. There are obvious reasons for Jones to think that the trial court is better situated to resolve the new trial motion. The question is whether Jones somehow has abandoned his new trial motion.

. In my view, it also is unfair to the defendant to decide the question without having put him on notice that it was even at issue.

. The majority contends that remanding to the trial court to consider the new trial motion would "placet 1 Jones in a more favorable position than he would be in if he had complied with Rule 50.” Jones has not failed to comply with Rule 50, and the majority's statement is not true. The majority does not pass on the merits of the new trial motion itself. Rather its rule prevents any court from reaching the merits of the motion, which is contrary to the approach taken in a majority of circuits.

. Let me stress what is not and cannot be at issue. The majority does not rule that it would be senseless to remand to the district court because it is plain that a new trial motion must be denied. No appellate court could possibly reach that conclusion here. The district court’s opinion implicitly found that the grounds for a new trial had been met when it concluded that the verdict was contrary to the weight of the evidence and its own assessment of the credibility of the evidence. See Jennings, 2005 WL 2043945, at *6-7. We certainly cannot say that it is likely, given the trial court's reasoning on the JMOL, that the trial court would not allow a motion for a new trial. Nor can we say on the record before us that it would be a clear abuse of discretion if the trial court decided on remand to allow the motion.

. The majority's effort to distinguish Bisbal-Ramos on the grounds that the plaintiff raised the error on appeal misses the point. Bisbal-Ramos established that there was no abandonment in the trial court, the issue at hand. Further, as to what is required on appeal to prevent abandonment, the district court's error in Bisbal-Ramos adversely affected the amount of damages awarded to the plaintiff, and the plaintiff specifically appealed the judgment. 467 F.3d at 19-20. That is not our situation.

. The majority states that Isalcsen is inappo-site because the majority believes it is not clear whether the appellee attempted to obtain a conditional ruling or whether he raised the issue on appeal. That the appellate court noted that the trial court had "remarked in passing on the excessiveness of the damages,” 825 F.2d at 1125, but did not mention any motion for reconsideration by the appellee suggests that there was no such motion. Moreover, the Seventh Circuit's purported rule is not a combination rule' — a new trial motion not pressed in the trial court supposedly is abandoned, whether or not the issue is raised on appeal. Thus, whether or not the appellee brought the issue to the attention of the appeals court is irrelevant.

. Again, the majority’s attempt to distinguish Freund (and Mays v. Pioneer Lumber, 502 F.2d 106 (4th Cir.1974), discussed below) because the appellee raised (or, in the case of Mays, may have raised) the error on appeal is unsuccessful. See supra note 51.

. The majority incorrectly states that it is not clear whether the Nodak Oil appellee raised its new trial motion on appeal. The Nodak Oil court stated that "[t]he record reveal[ed] that ... [t]he district court ... granted the motion ... for a judgment notwithstanding the verdict but did not specifically rule on the alternative motion for a new trial.” 526 F.2d at 798 (emphasis added). The court made no mention of the appellee’s having raised the issue. Rather, the court set a schedule for the submission of briefs on the new trial issue following the conditional ruling by the district court. Id. at 799.

. The majority argues that Shkolnikov is no bar because Rules 50(c)(1) and 50(d) contemplate a prevailing party asserting on appeal grounds entitling him to a new trial in the event the appellate court reaches an outcome unfavorable to him on its review of a district court's ruling on a motion for JMOL. Rule 50(c)(1) does not apply to a party whose motion for a new trial has not been denied. Rule 50(d) does not apply to a movant who has prevailed on a motion for JMOL. Neither permits adoption of the majority’s rule or excuses its failure to comply with Shkolnikov.

. The majority’s purported reliance on Neely is difficult to understand. Neely held only that courts of appeals may enter judgment as a matter of law in appropriate cases. 386 *158 U.S. at 330, 87 S.Ct. 1072. This is not such a case.

. Further, the court of appeals may not usurp the choices available to defense counsel in this situation. As Neely notes,
the appellee can choose for his own convenience when to make his case for a new trial: he may bring his grounds for new trial to the trial judge’s attention when defendant first makes an n.o.v. motion, he may argue this question in his brief to the court of appeals, or he may in suitable situations seek rehearing from the court of appeals after his judgment has been reversed.
386 U.S. at 328-29, 87 S.Ct. 1072. Similarly, the appellee cannot be forced to make his new trial arguments in the appellate court on pain of deemed abandonment when the trial court was reversed on the JMOL issue and there are meritorious arguments for a new trial.